(63 South. 403.)

No. 20,061.

STATE ex rel. PLEASANT, Atty. Gen., et al.
v. BAKER, Judge.

In re PLEASANT, Atty. Gen., et al.

(Oct. 20, 1913. Rehearing Denied Nov. 17, 1913.)

*(Syllabus by Editorial Staff.)*

1. INDICTMENT AND INFORMATION (§ 35*)— NATURE AND SIMILARITY—"INDICTMENT"— "INFORMATION."

There is no essential difference between an indictment and an information; both being formal accusations in the name of the state for alleged violations of the penal statutes.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 144; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 4, pp. 3551–3555; vol. 4, pp. 3585–3589.]

2. CONSTITUTIONAL LAW (§ 74*)—PRELIMINARY EXAMINATION BY PROSECUTING ATTORNEY—CONSTITUTIONAL AND STATUTORY PROVISIONS.

Under Const. art. 9, authorizing the prosecution of all offenses except capital crimes by information, and Rev. St. 1870, § 1018, providing that, when the Attorney General or any district attorney shall be informed that a crime or misdemeanor has been committed, it shall be their duty, respectively, to inquire ex officio into the fact by causing all persons supposed to have some knowledge of the facts to be summoned before some judge or justice of the peace, that their depositions may be taken, the judge of a criminal district court had jurisdiction to summon witnesses which the Attorney General and district attorney desired to examine relative to violations of the election law, notwithstanding Const. art. 96, providing that no duties or functions shall be attached by law to the Supreme Court, Court of Appeal, or district courts, or to the several justices or judges thereof, except such as are judicial, since in requesting the summoning of such witnesses the prosecuting attorney occupies the same position as a grand jury and is a part of the court for the administration of the criminal laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 124; Dec. Dig. § 74.*]

3. CRIMINAL LAW (§ 207*)—PRELIMINARY EXAMINATIONS BY PROSECUTING ATTORNEY—STATUTORY PROVISIONS.

Under Rev. St. 1870, § 1018, providing that, when the Attorney General or any district attorney shall be informed that a crime or misdemeanor has been committed, it shall be their duty to inquire ex officio into the fact by causing persons supposed to have knowledge of the fact to be summoned before some judge or justice of the peace, jurisdiction to summon such witnesses must be limited to judges exercising criminal jurisdiction and as between judges exercising such jurisdiction to the judge having jurisdiction of the offense sought to be investigated.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 414, 418, 440, 472–475; Dec. Dig. § 207.*]

Monroe, J., dissenting.

Mandamus by the State, on relation of R. G. Pleasant, Attorney General, and others, against Hon. Joshua G. Baker, Judge, Division A. Peremptory writs of mandamus ordered to issue.

R. G. Pleasant, Atty. Gen., and Chandler C. Luzenberg, Dist. Atty., of New Orleans, for relators. Dart, Kernan & Dart, of New Orleans, for respondent. R. H. Marr, of New Orleans, amicus curiæ.

LAND, J. R. G. Pleasant, Attorney General of the state of Louisiana, and Chandler C. Luzenberg, district attorney of the parish of Orleans, petitioned the Honorable Joshua G. Baker, one of the judges of the criminal district court of the parish of Orleans, as follows, to wit:

(a) "That they have been informed that on or about the 5th and 6th days of November, 1912, the election laws of the state were violated, and crimes committed by many of the commissioners and clerks of election, who officiated at the polls in the various precincts of the city of New Orleans, on Tuesday, November 5, 1912, when an election was held to elect presidential electors, members of Congress, parish officials, judges, and various other officers."

(b) "That the said crimes consisted in false returns of said election being made by many of said commissioners and clerks."

(c) "That it is the duty of your petitioners to inquire ex officio into said facts and to cause an investigation thereof to be made before your honor."

(d) "That, in order to make such investigation, there should be summoned before your honor Mortimer H. Wisdom, Louis Knop, and Samuel A. Montgomery, constituting the board of supervisors of elections of the parish of Orleans, also Lawrence J. Cassidy, clerk of the criminal district court of the parish of Orleans, who shall produce before your honor, for investigation, the ballot boxes used in said

election, and that the votes therein contained should be counted in the presence of the court, in order to ascertain whether said crimes have been committed."

(e) "That the depositions of all of said witnesses as may hereafter be summoned should be taken in presence of the court."

(f) "Wherefore, the premises considered, your petitioners pray that summonses issue to Mortimer H. Wisdom, Louis Knop, Lawrence J. Cassidy, commanding them to appear before this honorable court on such a day as your honor may select, and to appear from time to time thereafter until discharged, in order that their depositions may be taken as above shown. Petitioners further pray that the said Lawrence J. Cassidy, clerk of the criminal district court of the parish of Orleans, be ordered to bring before the court the ballot boxes above referred to for investigation. Petitioners further pray that all of the ballots in said boxes cast for presidential electors, congressmen, parish officials, judges, and various other officers, be counted in order to ascertain whether false and fraudulent returns thereof were ever made to the board of supervisors of elections of the parish of Orleans, and to the Secretary of State, or either of them."

(g) "Further prays for all orders necessary and for general relief."

The respondent judge refused to grant the relief prayed for by the relators for the reasons following, to wit:

"The application is based on section 1018 of the Revised Statutes, which reads as follows: 'Whenever the Attorney General or any district attorney shall be informed that a crime or misdemeanor has been committed, and that no complaint or declaration thereof has been made before any judge or justice of the peace, it shall be their duty respectively to inquire ex officio into the fact by causing all persons they shall suppose to have some knowledge of the fact to be summoned before some judge or justice of the peace, that their depositions may be taken.'

"Having serious doubts as to my right to grant the order prayed for, and believing that the question was one of sufficient importance to secure a full investigation, the court had the matter set down for argument and requested Judge R. H. Marr to appear as amicus curiæ at the hearing.

"The question to be determined is whether section 1018 of the Revised Statutes, in view of subsequent legislation, can be invoked as authority for this proceeding. The proposed investigation is purely of an inquisitorial nature, the object of which is merely to ascertain whether any crime has or has not been committed.

"It is not a preliminary examination because no one has been accused of any crime; but, even if it should be regarded as a criminal examination, this court has no jurisdiction, as under

the Constitution it can exercise none of the powers of a committing magistrate. Under article 139 of the Constitution, the criminal district court has original jurisdiction for the trial and punishment of certain designated offenses, and appellate and supervisory jurisdiction in certain other designated cases, and 'said court shall have general criminal jurisdiction extending to all cases arising in the parish of Orleans, the jurisdiction of which is not vested by law or by this Constitution in some other court.' Now as article 140 of the Constitution specifically vests in the city criminal courts the powers of committing magistrates in all criminal cases, it follows that the criminal district court is without power to conduct a preliminary examination.

"Article 96 of the Constitution provides that, except as provided in the Constitution, no duties or functions shall ever be attached by law to the Supreme Court, Court of Appeal, or district courts, or to the several justices or judges thereof, except such as are judicial. My duty is to try cases and impose punishments, and, before this duty can be exercised, there must be an indictment or information, charging some one with a crime; otherwise there is no issue coming within my jurisdiction, and consequently there can be no exercise of judicial functions. I can hear testimony for the purpose of passing upon controversies submitted to me for adjudication, but it is no part of the court's duty to take testimony simply for the purpose of ascertaining whether or not a crime has been committed. The court's jurisdiction over a matter arises only after a defendant is before the court for trial.

"The grand jury is the only body before whom an investigation of the character contemplated by this application can be conducted. They have not only the right to investigate cases where some specific person is charged with crime, but they also have the right to make an investigation for the pure purpose of ascertaining whether or not a crime has been committed. They have full power to summon witnesses for this purpose, and both the Attorney General and the district attorney have the right to be present during such investigation.

"Section 1018 of the Revised Statutes was originally enacted in 1817 (Laws 1817, p. 184) and re-enacted as section 42 of Act No. 121 of 1855. The Constitutions of 1812 and 1852 conferred on the Legislature the right to regulate the jurisdiction of all inferior courts; and it is significant that neither of these Constitutions contained any provisions similar to article 96 of the Constitution of 1898, which forbids the Legislature to assign any other than judicial duties or functions to the district judges.

"I am therefore of the opinion that while section 1018 of the Revised Statutes was constitutional at the time of its original enactment in 1817, and when re-enacted in 1855, it had been rendered inoperative, so far as this court

is concerned, by the adoption of the present Constitution.

"For the foregoing reasons, the petition is denied."

The question of the right to open the ballot boxes, after the expiration of six months, has been ably presented in argument and brief by Mr. H. P. Dart, counsel for the clerk of court; his contention being that there is no such right. This question, not being at this time before the court, will not be passed upon.

The relators have applied to this court for a writ of mandamus to compel the respondent judge to grant the relief prayed for by them; and the case is now before us on a writ of certiorari.

[1-3] From the very beginning of our state government, prosecutions for offenses in Louisiana have been by indictment or information. Under article 9 of our present Constitution, all offenses, except capital crimes, may be prosecuted by information. There is no essential difference between an indictment and an information. Both are formal accusations in the name of the state for alleged violations of her penal statute. The grand jury has the assistance of the court in securing the attendance of witnesses and the production of documentary evidence. There is no good reason why the state's prosecuting officers should not have like assistance, when informed of the commission of a crime or misdemeanor. Section 1018 of the Revised Statutes of 1870 was originally enacted in 1817 for the express purpose of enabling the state's prosecuting officers to inquire into the fact of the alleged commission of a crime or misdemeanor. In making a request for the summoning of witnesses for the purposes of such an inquiry, the prosecuting officer occupies the same position as the grand jury and like that body is a part of the court for the administration of the criminal laws of the commonwealth. Section 1018 makes it the duty of the Attorney General, or the dis-

trict attorney for the parish of Orleans, to inquire ex officio into the fact of the commission of crimes and to cause witnesses to be summoned before "some judge or justice of the peace" to the end that their depositions may be taken. While the statute might be construed to include any judge or justice in the country parishes, in the parish of Orleans, it must be limited to judges exercising criminal jurisdiction, because the inquiry is a preliminary step to a criminal prosecution. Between judges exercising such jurisdiction, the finger of the statute points to the judge who has jurisdiction of the offense sought to be investigated. In the instant case this is the respondent judge and not the judge of one of the city criminal courts.

Considering the petition of the relators to the judge below as a preliminary step in the prosecution of an offense within the jurisdiction of his court, we find no difficulty in reaching the conclusion that our learned brother erred in declining jurisdiction in the premises.

The judge's contention that his jurisdiction is restricted to the trial of criminal cases is refuted by the fact that his court organizes grand juries for the purpose of inquiring into the commission of crimes and misdemeanors and compels the attendance of witnesses and the production of documentary evidence before such bodies. The relators pray for like assistance to aid them in similar inquiries.

It is therefore ordered that peremptory writs of mandamus issue as prayed for by the relators to the extent of ordering the summoning witnesses and the production of ballot boxes, reserving all other questions.

MONROE, J. I concur in the view, expressed by the respondent judge, that the grand jury is the proper body to make the proposed investigation, and I feel strengthened in that conclusion by the fact that the law, constitutional and statutory, has uni-

formly received that construction since the adoption of the present Constitution; no instance to the contrary having been cited by the relators. I therefore dissent.