FOURNET, Chief Justice
(dissenting from the refusal to grant a writ).
I am in full accord with the views expressed by the majority in consultation that R.S. 15:156[1] is a constitutional piece of legislation when applied within its proper limits. However, great as is the respect I entertain for my associates, I cannot subscribe to their view that these provisions are constitutionally applied in the instant case, and with their refusal to stay these proceedings in the district court by the granting of this writ.
Clearly the order of the trial judge in this case was improvidently granted, for neither the Attorney General of Louisiana nor any district attorney has the right or authority to invoke the provisions of this statute unless and until they are informed that a crime has actually been committed, and that no complaint or declaration thereof has been made before a judge or justice of the peace, and the petition upon which the order was obtained does not contain any allegation to that effect.
As the record reflects, this entire proceeding is based on a statement in a report of the state’s Supervisor of Public Funds following an audit of the accounts of the Police Jury of Rapides Parish for the period ending December 1962, and a resolution of the police jury, both being attached to and made a part of the petition in this case. The former is, in effect, nothing more than a “criticism” of certain purchases made by the police jury (mostly from one individual whose wife was an employee of the police jury), while the latter requested the district attorney’s office to study this report and “make an investigation” and take any form of legal action necessary in the premises. Most important is the emphatic observation of the member of the police jury proposing such action in his motion that he didn’t “know if these purchases were illegal or if they constituted malfeasance,” and a reference to the auditor’s report itself does not disclose that any particular crime or offense had actually and in fact been committed.
Moreover, R.S. IS :156, as incorporated in the Code of Criminal Procedure when our statutes were revised in 1950, is nothing more than a codification of the law that has been in existence since the governor of Louisiana, on February 22, 1817, approved the act adopted by the then General Assembly of Louisiana, which is to be found at page No. 180 of the 1816-17 acts of the state, being Section 8 of an act entitled “An Act supplementary to an act entitled ‘An act for the punishment of crimes and misdemeanors,’ ” and it must, therefore, under *736 our law and jurisprudence, be strictly construed. However, even given a liberal interpretation, there is certainly no language in R.S. 15:156 from which it can be deduced that the legislature ever intended by its adoption to give to either the attorney general or our district attorneys the unbridled power, authority, and privilege of engaging in a public “fishing expedition” such as is being authorized with the refusal of this writ.
It is significant that the district attorney, in a prepared statement presented at a press conference called by him and attended by representatives of the television and radio stations, as well as newspapers, serving Rapides parish and surrounding sections, set out he had been called upon by a resolution of the Police Jury of Rapides Parish to “initiate an investigation ’’ but inasmuch .as such an “investigation” carried on either in his office or before the grand jury would necessarily exclude the public, he had decided on an “investigation” in open court with the public in attendance. However, when questioned as to what crime had been committed, he stated there was a reference in the police jury resolution to a criticism in the auditor’s report with respect to the purchase of supplies in excess of $16,000 without bids, commenting “that would be a violation of the statute to buy that much property without receiving bids on it,” but the district attorney having obviously checked the records in the matter, commented further, “Of course, this wasn’t all bought at one time.” He further stated the purpose of the investigation was to gather information to determine what crime or •crimes or offenses, if any, had been committed. Finally, when asked if the date of the election (scheduled for December 7, 1963) had anything to do with him fixing November 25, 1963, as the date for this open public “investigation,” he replied: "Yes, it did. I was very anxious to get this in before the election.” (The emphasis has. been supplied by me.)
I believe the statement of the district attorney himself on that occasion to the effect that “This means of investigation of alleged offenses has. never been used in this parish so far as I know,” speaks more eloquently than anything I can say to reflect that his predecessors, in this office, and, I may add, those occupying similar offices throughout the entire state now and since 1817, in construing the provisions of R.S 15:156, have consistently recognized the limitations intended by the legislature in the enactment thereof.[2] (The emphasis has been supplied by me.)
In the cases of State ex rel. Pleasant v. Baker, 133 La. 919, 63 So. 403, and State ex rel. Cassidy v. Baker, 135 La. 92, 64 So. 993, it was pointed out that an inquiry or inquest sought under R.S. 15:156 can be “assimilated” to an investigation carried on by a grand jury. However, it is unbelievable that the legislature ever entertained the idea that in giving such power and authority to an individual official under this statute it meant it to be exercised without the safeguards and protections guaranteed all “investigations” of alleged crimes, whether in the office of the district attorney or behind the closed doors of a grand jury room, not only under the constitution of Louisiana, but also that of the United States. Indeed, if this was. so meant, the statute would be an unconstitutional invasion of the privacy guaranteed to all of our people until they are actually charged with the commission of a crime or offense. It seems to me such an open public “investigation” in court would be far more damaging than resort to wire tapping or the placing of “bugs” in houses and buildings for the *737 purpose of listening to everything occurring therein.
The fact that this procedure is admittedly being invoked at this time — on the eve of an important state election — and may, therefore, be felt by some to pose a purely political question with which this court is not concerned, is actually of only secondary importance here. However laudable or desirable it may be to have the facts gathered in this open court hearing so the public can intelligently vote in the coming election, my primary concern (as it should be the concern of all) centers on the untold harm that can but ultimately result when serious consideration is given to the lengths to which such unbridled authority and power in the hands of a single official can be carried, now that the denial of this writ has established such a rule in the jurisprudence, for there is no limit to which it may be utilized by an unscrupulous person holding such office, whether to defeat an opponent at the polls, or merely to destroy another’s character and/or business through personal motivations having no political significance whatsoever. In fact, no consideration in this matter has even been given to the fact that such “investigations” in our trial courts may not only greatly hamper the proper functioning of these courts, hut place an even greater burden on their dockets that are already overloaded with the regular legal litigations they were intended to preside over.
It is all the more frightening when it is realized that the sanctioning of such a proceeding as is here being authorized, will subject the personal and business affairs of an individual or firm to open, public, unrestrained, unauthorized, uncontrolled, and illegal public airing on the pretext that such scrutiny may possibly ferret out some crime or misdemeanor that has been committed by some unknown person or firm, even though the rights, privileges, and immunities guaranteed that individual or firm by the constitutions of the State of Louisiana and of the United States are not thereby protected or even considered.
SUMMERS, J., concurs with FOUR-NET, C. J., in the reasons for dissent which he here assigns.

. R.S. 15:156 provides: “Whenever the attorney-general or any district attorney shall be informed that A GRIME or MISDEMEANOR has been committed, and that no complaint or declaration thereof has been made before any judge or justice of the peace, it shall be their duty respectively to inquire ex officio into the fact by causing all persons they shall suppose to have some knowledge of the fact to be summoned before some judge or justice of the peace, that their depositions may. be taken * * (The emphasis has been supplied by me.)

. For a history of this article in our Revised Statutes see the act adopted in 1817 as referred to in the body of this opinion, and also the intervening acts, being Section 42 of Act No. 121 of 1855; Section 43 of the Revised Statutes of 1856, under the title “Criminal Proceedings,” and to be found at page No. 166 thereof; Section 1018 of the Revised Statutes of 1870; Article 156 of the Code of Criminal Procedure adopted in 1928; and Act No. 24 of the First Extraordinary Session of 1934.