THE STATE OF OHIO, APPELLANT, *v.* JACKSON, APPELLEE.

[Cite as *State v. Jackson,* 102 Ohio St.3d 380, 2004-Ohio-3206.]

(No. 2003–0408—Submitted January 14, 2004—Decided July 14, 2004.)

LUNDBERG STRATTON, J.

## I. Introduction

{¶ 1} In this case, we must determine whether Ohio law precludes, using ballots as evidence of ballot tampering. The appellate court held that the "secret ballot rule" precluded use of the ballots as evidence. We disagree and reverse the judgment of the court of appeals.

## II. Statement of the Case

{¶ 2} Pursuant to R.C. 3509.08, which permits election board members to assist physically infirm electors in voting, the Cuyahoga County Board of Elections sent two board employees, Linda Weaver, a Democrat, and appellee John Jackson, a Republican, to help physically infirm residents at a Cleveland nursing home mark their ballots. Weaver became suspicious that Jackson was marking the ballots contrary to some of the residents' intentions. For example, one resident allegedly intended to vote her entire ballot Democratic, but Weaver noticed that the ballot reflected a vote for George W. Bush, who was the Republican candidate for President of the United States.

{¶ 3} Upon returning to work on Monday October 23, 2000, Weaver reported her suspicions to the board. Following an investigation, the Cuyahoga County

Prosecuting Attorney's Office secured a search warrant authorizing investigators to seize the allegedly tainted ballots.

{¶ 4} Subsequently, a grand jury indicted Jackson on five counts of tampering with ballots in violation of R.C. 3599.26 and one count of misconduct of an employee of the board of elections in violation of R.C. 3599.16. Jackson filed a motion to suppress the ballots. Jackson's motion relied on provisions in the Revised Code, Section 1, Article V of the Ohio Constitution (right to vote), and Section 2, Article V of the Ohio Constitution (all elections must be by ballot). After oral argument, the trial court granted Jackson's motion to suppress the ballots.

{¶ 5} The state appealed, and in a two-to-one decision, the court of appeals affirmed the trial court's judgment. The majority ruled that the "secret ballot rule" precluded disclosure of ballots and that because it contained no exception to the secrecy requirement, there was no authority to permit the ballots to be used as evidence.

{¶ 6} This cause is now before this court pursuant to the acceptance of the state's discretionary appeal.

### III. Analysis

#### A. Constitutional Claims

1. Standing

{¶ 7} The state argues that Jackson lacked standing to bring a Fourth Amendment claim because he has no reasonable expectation of privacy in the ballots. Jackson counters that his constitutional claim for suppressing the ballots does not originate in the Fourth Amendment, and therefore standing is not an issue, because the expectation of privacy is not required outside the context of Fourth Amendment inquiries. We agree with Jackson.

{¶ 8} The Fourth Amendment protects persons from "unreasonable searches and seizures" by the government. *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 364, 588 N.E.2d 116. Under the exclusionary rule, evidence seized in violation of the Fourth Amendment will result in its suppression. *State v. Jones* (2000), 88 Ohio St.3d 430, 434, 727 N.E.2d 886. In order to have standing to challenge a search or seizure, the defendant must have a reasonable expectation of privacy in the evidence seized. See *Alderman v. United States* (1969), 394 U.S. 165, 171–172, 89 S.Ct. 961, 22 L.Ed.2d 176.

{¶ 9} The ballots in this case were seized pursuant to a search warrant, and its validity was never seriously challenged by Jackson. Instead, Jackson asserts that Sections 1 and 2 of Article V of the Ohio Constitution require ballot secrecy.

Thus, Jackson does not allege that the seizure was unreasonable but rather alleges that Sections 1 and 2 of Article V of the Ohio Constitution prohibit disclosure of the ballots and thus prohibit their use as evidence. Accordingly, we reject the state's argument that Jackson lacked standing under the Fourth Amendment to challenge admission of the ballots.

2. The Merits of Jackson's Constitutional Claim—Ballot Secrecy

{¶ 10} Jackson asserts that the Ohio Constitution substantively requires that a ballot must remain secret without qualification. Jackson relies on Sections 1 and 2, Article V of the Ohio Constitution. Section 1, Article V provides:

{¶ 11} "Every citizen of the United States, of the age of eighteen years, who has been a resident of the state, county, township, or ward, such time as may be provided by law, and has been registered to vote for thirty days, has the qualifications of an elector, and is entitled to vote at all elections. Any elector who fails to vote in at least one election during any period of four consecutive years shall cease to be an elector unless he again registers to vote."

{¶ 12} Section 2, Article V provides:

{¶ 13} "All elections shall be by ballot."

{¶ 14} Generally speaking, in construing the Constitution, we apply the same rules of construction that we apply in construing statutes. *Miami Cty. v. Dayton* (1915), 92 Ohio St. 215, 223, 110 N.E. 726. Thus, the intent of the framers is controlling. If the meaning of a provision cannot be ascertained by its plain language, a court may look to the purpose of the provision to determine its meaning. *Castleberry v. Evatt* (1946), 147 Ohio St. 30, 33 O.O. 197, 67 N.E.2d 861, paragraph one of the syllabus.

{¶ 15} Section 1, Article V of the Ohio Constitution merely indicates that every citizen who has certain qualifications has a right to vote. Section 2, Article V merely requires that "[a]ll elections shall be by ballot." Clearly, Section 1 has nothing to do with this case. Section 2 does not expressly provide that ballots must always remain secret. Therefore, we must look beyond the language of Section 2 to determine its intent.

{¶ 16} Although this court has never had occasion to answer the particular question that is before us today, there are several cases that we find instructive on the issue of ballot secrecy.

{¶ 17} In 1896, this court, in interpreting Section 2, Article V of the Ohio Constitution, stated: "No form of ballot is prescribed by the constitution, and therefore the general assembly is free to adopt such form as in its judgment shall be for the best interests of the state. The election must be by ballot, but the form of the ballot, so long as it is a ballot, is left to the sound discretion of the

general assembly." *State ex rel. Bateman v. Bode* (1896), 55 Ohio St. 224, 229, 45 N.E. 195. This proclamation, however, begged the question "What does voting by 'ballot' mean?"

{¶ 18} In 1909, the state sought to purchase voting machines to tabulate the votes. A Cleveland taxpayer filed suit, alleging that use of voting machines would violate the Constitution's requirement that all elections be by ballot. *State ex rel. Karlinger v. Bd. of Deputy State Supervisors of Elections* (1909), 80 Ohio St. 471, 89 N.E. 33. The court in *Karlinger* recognized that there had been little doubt since the adoption of the Constitution in 1802 that ballot meant "printed or written expression of the voter's choice upon some material capable of receiving and reasonably retaining it, prepared or adopted by each individual voter and passing by the act of voting from his exclusive control into that of the election officers, to be by them accepted as the expression of his choice." Id., 80 Ohio St. at 489–490, 89 N.E. 33. Adopting this literal definition of "ballot," the court held that use of voting machines violated the requirement to vote by ballot because the "card boards are attached to the machines bearing the names of candidates and the propositions and amendments upon which the electors are to express a choice. These remain attached to the machine for the information of all voters. They do not pass into the control of any voter, nor by the act of voting into the control of the officers of the election. To speak of such a card board as the ballot of the constitution is obviously paying but mock deference to that instrument." Id., 80 Ohio St. at 490–491, 89 N.E. 33.

{¶ 19} In 1929, the validity of voting machines came before this court again in *State ex rel. Automatic Registering Machine Co. v. Green* (1929), 121 Ohio St. 301, 168 N.E. 131. Again opponents of voting machines alleged that voting by machine contravened Section 2, Article V of the Ohio Constitution. However, the court declined to follow the literal definition of "ballot" adopted in *Karlinger.* Citing numerous laws from foreign jurisdictions, the court in *Green* recognized that "ballot" "means secret voting in contradistinction to *viva voce* [by voice], or open voting." Id., 121 Ohio St. at 308, 168 N.E. 131. Thus, the court in *Green* held:

{¶ 20} "A constitutional requirement that all elections be by ballot does not invalidate an otherwise legal enactment providing for the use of voting machines in elections. The term 'ballot' designates *a* method of conducting elections which will insure secrecy, as distinguished from open or *viva-voce* voting." (Emphasis added.) *Green,* 121 Ohio St. 301, 168 N.E. 131, paragraph one of the syllabus.

{¶ 21} We believe that Section 2, Article V aspires to secrecy of voting. We find it implausible that the framers adopted this provision for the purpose of imposing for eternity the type of ballot used 1851. Certainly, the framers had to foresee that the design and or implementation of the ballot would evolve over

time. That being so, the term "ballot" must still have some meaning. We look to *Green* to answer this question. We believe that "ballot" must mean "secret voting." Accordingly, pursuant to *Green*, we hold that Section 2, Article V aspires to "a method of conducting elections which will ensure secrecy."

{¶ 22} However, a constitutional provision alone has no force unless it is self-executing. A constitutional provision is self-executing if it supplies a sufficient rule by which the protection that it affords can be enforced without legislative enactment. *State v. Williams* (2000), 88 Ohio St.3d 513, 728 N.E.2d 342. Thus, "the words of a constitutional provision must be sufficiently precise in order to provide clear guidance to courts with respect to their application if the provision is to be deemed self-executing." Id. "Likewise a constitutional provision is not self-executing if its language, duly construed, cannot provide for adequate and meaningful enforcement of its terms without other legislative enactment." Id. citing *State ex rel. Russell v. Bliss* (1951), 156 Ohio St. 147, 151–152, 46 O.O. 3, 101 N.E.2d 289.

{¶ 23} Section 2, Article V is silent in the scope of the privacy to which it aspires. Moreover, beyond the aspiration of secrecy at the polls, the process of how the voting will be conducted remains within the sound discretion of the General Assembly. Without such specifics regarding the voting process, it is impossible to determine whether a proposed election process would satisfy the Constitution's aspiration of secrecy.

{¶ 24} Accordingly, we hold that Section 2, Article V of the Ohio Constitution aspires to ballot secrecy, but it is not self-executing.

### B. The Statutory Requirement of Ballot Secrecy

{¶ 25} We now examine the statutory law relied on by the appellate court that implements the constitutional aspiration of ballot secrecy. The appellate court relied on R.C. 3599.20, 3509.08, and 3505.18 in holding that ballots must be kept secret irrespective of the reason for disclosure. R.C. 3599.20 provides:

{¶ 26} "No person shall attempt to induce an elector to show how the elector marked the elector's ballot at an election; or, being an elector, allow the elector's ballot to be seen by another, except as provided by section 3505.24 of the Revised Code, with the apparent intention of letting it be known how the elector is about to vote; or make a false statement as to the elector's ability to mark the ballot; or knowingly mark the ballot so it may be identified after it has been cast; or attempt to interfere with an elector in the voting booth when marking the elector's ballot; or knowingly destroy or mutilate a lawful ballot; or remove from the polling place or be found in unlawful possession of a lawful ballot outside the enclosure provided for voting; or knowingly hinder or delay the delivery of a lawful ballot to a person entitled to receive it; or give to an elector a ballot

printed or written contrary to law; or forge or falsely make an official indorsement on a ballot."

{¶ 27} "Whoever violates this section is guilty of a felony of the fifth degree."

{¶ 28} R.C. 3509.08(A), which permits election board employees to assist electors in certain ways, provides:

{¶ 29} "Any disabled or confined elector who declares to the two employees that the elector is unable to mark the elector's ballot by reason of physical infirmity, and such physical infirmity is apparent to the employees to be sufficient to incapacitate the voter from marking his ballot properly, may upon request, receive the assistance of the two employees in marking the elector's ballot, and they shall thereafter give no information in regard to this matter. Such assistance shall not be rendered for any other cause."

{¶ 30} Finally, R.C. 3505.18 provides:

{¶ 31} "The elector shall then retire to one of the voting compartments to mark his ballot. No mark shall be made on any ballot which would in any way enable any person to identify the person who voted the ballot."

{¶ 32} The appellate court reasoned, "If the legislature had intended an exception to the secrecy rule to enable prosecutions for the offense of tampering with ballots, it could have provided for the Board of Elections or the Prosecutor's Office to examine ballots in such cases. It did not do so."

{¶ 33} We hold that the statutory ballot secrecy applies only to election proceedings and not to the admission of evidence in a criminal trial. Moreover, applying statutory ballot secrecy to preclude using a ballot as evidence of a crime conflicts with a board of elections' duties to investigate and gather evidence of election irregularities.

1. Ballot Secrecy Applies Only to Election Proceedings

{¶ 34} R.C. 3599.20 is the primary source of the statutory ballot secrecy. Thus, we focus our analysis on that provision. The paramount consideration in determining the meaning of a statute is legislative intent. *State ex rel. Asberry v. Payne* (1998), 82 Ohio St.3d 44, 47, 693 N.E.2d 794. "In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." *State v. Wilson* (1997), 77 Ohio St.3d 334, 336, 673 N.E.2d 1347; *MacDonald v. Bernard* (1982), 1 Ohio St.3d 85, 89, 1 OBR 122, 438 N.E.2d 410. Finally, where a statute is ambiguous courts may look to the purpose of the statute in order to determine legislative intent. *Family Medicine Found., Inc. v. Bright*, 96 Ohio St.3d 183, 2002-Ohio-4034, 772 N.E.2d 1177, ¶ 9, citing *Christe v. GMS Mgt. Co., Inc.* (2000), 88 Ohio St.3d 376, 377, 726 N.E.2d 497.

{¶ 35} R.C. 3599.20 criminalizes numerous actions besides disclosure of a ballot, including to (1) allow one's own ballot to be seen "with the apparent intention of letting it be known how [one] is about to vote," (2) "attempt to interfere with an elector in the voting booth," (3) "willfully destroy or mutilate a lawful ballot," (4) "remove from the polling place or be found in unlawful possession of a lawful ballot outside the enclosure provided for voting," (5) "willfully hinder or delay the delivery of a lawful ballot to a person entitled to receive it," (6) "give to an elector a ballot printed or written contrary to law," or (7) "forge or falsely make an official indorsement on a ballot."

{¶ 36} R.C. 3599.20's criminalization of numerous other activities pertaining to the disposition of ballots suggests that the intent of R.C. 3599.20 is not to impose ballot secrecy but is to serve the broader purpose of protecting electors from any treatment of the ballot inconsistent with the right to vote. This conclusion is further supported when we examine the history and purpose of ballot secrecy in Ohio.

{¶ 37} As early as 1891, the General Assembly adopted a method for conducting elections that incorporated the essential elements of the Australian ballot system. 88 Ohio Laws, 449, 460–461; see *State v. Vause* (1911), 84 Ohio St. 207, 95 N.E. 742. Although the specifics may differ from jurisdiction to jurisdiction, the Australian ballot system has two cardinal features: "(1) An arrangement for *polling* by which *compulsory secrecy of voting* is secured; and (2) an official ballot containing the names of all candidates, printed and distributed under state or municipal authority." 26 American Jurisprudence 2d (1996), Elections, Section 299, citing *Allen v. Glynn* (1892), 17 Colo. 338, 29 P. 670; *State v. Black* (1892), 54 N.J.L. 446, 24 A. 489. The purpose of ballot secrecy is to protect the electors from bribery and corruption. *Richwood v. Algower* (1917), 95 Ohio St. 268, 271–272, 116 N.E. 462. Ultimately, this secrecy requirement preserves the integrity of the election and its results, which is critical to our democratic form of government. Although Ohio's statutory law adopting ballot secrecy has been amended many times since its inception in 1891, it is evident from this long history that protecting voters from corruption was and continues to be the purpose behind ballot secrecy.

{¶ 38} To permit the secret ballot rule to preclude the disclosure of ballots as evidence in a criminal matter conflicts with the purpose of ballot secrecy. In holding that ballot secrecy does not preclude admitting ballots as evidence of election fraud, the Supreme Court of Louisiana in *State ex rel. Cassidy v. Baker* (1914), 135 La. 92, 103, 64 So. 993 reasoned:

{¶ 39} "The secrecy of the ballot is desired simply as a means towards the purity of the election. To violate that secrecy, therefore, for the purpose of punishing those who may have committed a fraud in the election, is not to go

counter to that policy but strictly in line with it. The secrecy is designed as a preventative measure; retributive punishment is a repressive measure; both to the same end."

{¶ 40} Other jurisdictions have also held that elections laws pertaining to the secrecy or preservation of ballots are limited in their scope to election matters and do not apply to preclude ballots as evidence in a criminal case. See, e.g., *Commonwealth v. Ryan* (1892), 157 Mass. 403, 32 N.E. 349; *People v. Harrison* (1943), 384 Ill. 201, 51 N.E.2d 172. We agree with this line of reasoning and hold that while ballot secrecy protects the election process, it has no bearing on the admissibility of ballots as evidence in a criminal matter.

2. Excluding Ballots as Evidence Conflicts with a Board of Elections' Duty to Investigate and Report Election Crimes

{¶ 41} Excluding an otherwise lawfully seized ballot for use as evidence in a criminal ballot-tampering case pursuant to the secret ballot rule conflicts with a board of elections' duty to investigate and report election crimes. R.C. 3501.11(J) provides that county boards of elections have a duty to "[i]nvestigate irregularities, nonperformance of duties, or violations of Title XXXV of the Revised Code by election officers and other persons; administer oaths, issue subpoenas, summon witnesses, and *compel* the *production of* books, papers, records, and other *evidence* in connection with any such investigation; and *report* the facts to the *prosecuting attorney*." (Emphasis added.)

{¶ 42} Ballots could be probative to an election-tampering charge. See, generally, *Sinks v. Reese* (1869), 19 Ohio St. 306, 1869 WL 58 (ballots are best evidence of election contest), reversed on other grounds. Therefore, applying the secret ballot rule to exclude ballots as evidence of election crimes or irregularities conflicts with a board of elections' duty to investigate and report these crimes or irregularities to the prosecutor.

{¶ 43} Ultimately then, applying the secret ballot rule to exclude ballots as evidence of ballot tampering or election irregularities leads to the unreasonable and absurd result of hindering the prosecution of such crimes by precluding the use of probative evidence. Accordingly, we harmonize the secret ballot rule and R.C. 3501.11(J) by holding that the secret ballot rule does not preclude the lawful seizure of a ballot for use as evidence of ballot tampering or other election-law violations.

## C. Conclusion

{¶ 44} The purpose of the secret-ballot rule is to ensure that the elector exercises his or her right to suffrage free from corruption, thereby ensuring integrity of the election results. However, the secret-ballot rule does not apply in

determining whether a ballot can be used as evidence in a criminal proceeding. Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed.

RESNICK, F.E. SWEENEY, O'CONNOR and WALSH, JJ., concur.

MOYER, C.J., and PFEIFER, J., concur in judgment only.

JAMES E. WALSH, J., of the Twelfth Appellate District, sitting for O'DONNELL, J.

---

William Mason, Cuyahoga County Prosecuting Attorney, Richard A. Bell and Matthew E. Meyer, Assistant Prosecuting Attorneys, for appellant.

McGinty, Gibbons, Hilow & Spellacy and Henry J. Hilow, for appellee.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, and Christopher D. Stock, Assistant State Solicitor, urging reversal for amicus curiae Ohio Attorney General.

William F. Schenk, Greene County Prosecuting Attorney, and Andrew J. Hunt, Assistant Prosecuting Attorney, urging reversal for amicus curiae Greene County Prosecuting Attorney.