MALCOLM E. NICHOLS *vs*. BOARD OF ELECTION COMMISSIONERS OF THE CITY OF BOSTON.

Suffolk. October 29, 1907. — October 30, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, SHELDON, BRALEY, & RUGG, JJ.

*Elections. Constitutional Law. Voting Machine.*

The provisions of the Constitution requiring that representatives to the General Court shall be "chosen by written votes," those which by implication require that other State officers shall be chosen in the same way and those in regard to the sorting and counting of votes in such elections cannot be complied with by the use of a voting machine which does not indicate the choice of the voter by some kind of writing upon a paper or other material thing which in his sight shall pass from his control to that of the officers charged with the duty of conducting the election, and which with the other written votes cast in the election shall continue to be the same material things capable of being handled, sorted and counted.

KNOWLTON, C. J. This is a petition for a writ of mandamus to compel the board of election commissioners of the city of Boston to provide the so called Australian ballot for use at the next election in Precinct 6 of Ward 10 of that city instead of the Dean ballot machine which they have voted to use. The case was reserved by a single justice for determination by the full court.

It appears that this machine has been approved by the secretary of the Commonwealth, the treasurer and receiver general, and the auditor of accounts, under the provisions of R. L. c. 11, § 270, and regulations for the use of it have been made and instructions for voters have been prepared by the secretary of the Commonwealth in accordance with the St. of 1905, c. 313, § 2.

This machine is a mechanical device for registering votes. In shape it is like a box. It is about three feet in height and two and one-half feet square upon its upper surface. It is used as follows: Immediately before the opening of the polls it is inspected by the election officers. There are certain dials on the machine, some registering the number of votes received by a candidate for office, and one which records the total number of voters casting ballots. All these dials are set at zero. The election officers see that a steel top is placed directly over the machine, upon which top is pasted the official list of candidates to be voted for and questions to be answered. This top is then locked by the election officers, and when it is so locked, it is impossible for any voter to see the dials which register the number of votes cast for the respective candidates, and all that the voter can see is the names of the various candidates and the language of the questions, and such other information in reference to the candidates as is required by law to be upon the ballot. As each voter gives his name when about to vote, he steps under a curtain connected with the machine, which curtain conceals the face of the machine and all of the mechanical device used for registering votes from the sight of the election officers. The voter sees upon the face of the machine only the names and information above mentioned, and a number against the name of each candidate. There is a blank space to the right of the number, and a key to the right of the blank space, about one-fourth of an inch square. The voter pushes down the key to the right of the name of each candidate for whom he desires to vote. The pushing down of the key causes a cross to be exposed in the blank space between the number and the key, but none of the dials registering votes is moved in consequence of the pressing down of the key. After he has marked a cross in this way against the name of each candidate for whom he desires to vote, he throws a lever, called the operating lever, from right

to left, before which act he may change his cross from one candidate to another. This lever is attached to the machine, and the moving of it from right to left, and this alone, causes a dial connected with the name of each candidate so crossed to move, thereby registering a vote for each candidate whose name is crossed. The movement of this dial cannot be seen by the voter or by any one else. After the polls are closed, the election officers unlock the top on which the official list of candidates and questions is pasted, and read the dials, and make official returns of the votes cast for each of the respective candidates and questions in accordance with the figures shown upon the dial.

The petitioner contends that the use of this machine as proposed would be illegal, and in violation of the provision of the Constitution of the Commonwealth, c. 1, § 3, art. 3, which provides that representatives to the General Court shall be "chosen by written votes," and of other provisions of the Constitution, which by implication require that other State officers shall be chosen in the same way. See Const. Mass. c. 2, § 1, art. 3; c. 1, § 2, art. 2; c. 2, § 1, art. 10; Amendments to the Constitution, arts. 16, 17. In c. 2, § 1, art. 3, cited above, it is made the duty of the town clerk, in the presence of the selectmen of towns who conduct the election, to "sort and count the votes, form a list of the persons voted for, with the number of votes for each person against his name," and to "make a fair record of the same," and a "public declaration thereof"; and there are other similar provisions.

The constitutional question thus raised was considered in the different answers given to questions submitted by the House of Representatives which appear in the *Opinions of the Justices,* 178 Mass. 605, 609, 611.

This question may be answered affirmatively or negatively, according to the degree of strictness with which we interpret the language of the Constitution. If a choice by written votes is to be limited as to details to the particular method or methods which the framers of the Constitution had in mind more than one hundred years ago, it is plain that the use of this machine is not permissible. If we look at the object of the constitutional requirement, there is ground for an argument that it may be accomplished by the use of this machine, and that, in a broad and

liberal application of the provisions of the Constitution to the present conditions and possible methods of voting, the use of this machine at an election should be deemed a choice " by written votes." It may be argued that the making of a material record of his act by each voter, and thereby securing for it greater certainty and permanence than would result from a show of hands, or a declaration *viva voce*, is accomplished by the use of the machine as well as by a paper vote written by the hand of the voter and deposited in a box. The secrecy of the ballot is even more effectively secured by the machine than by the method practised one hundred years ago. It might be contended that, when the voter has pressed down the key before the name of each of his candidates, he has before him his vote upon which his choice is designated by the crosses opposite the names, and that his movement of the lever which makes the record upon the dials below does not differ in effect from a movement of his hand in throwing a piece of paper into a box, and that the numerical adjustments and uncertainty that intervene between his act and the entry of the result by the election officers are no greater in the one case than in the other. Some of the justices, including the writer of this opinion, would prefer to decide that this method of voting is within the meaning of the constitutional provision.

But the method in detail is entirely unlike the writing of a name of chosen candidates upon a piece of paper, and the deposit of the paper in a box, to be afterwards taken out and counted. In the use of the machine the voter must trust everything to the perfection of the mechanism. He cannot see whether it is working properly or not. This chance of error, whether greater or less than the chance that a ballot deposited in a box will not be properly counted, is very different from it. It was not within the knowledge or contemplation of the framers of the Constitution.

In one of the opinions already referred to, signed by three of the justices, (178 Mass. 616,) this language was used:

" Interpreting the Constitution in the light of the circumstances existing at the time of its adoption, as well as of the laws and customs which had theretofore prevailed, we think that the language prescribing the way in which the will of the voters shall be expressed and ascertained in the case of the election of

governor and of the other State officers, where similar language is used, necessarily implies at least that the choice of the voter shall be indicated by some kind of writing upon a paper or other material thing, that this material thing bearing this written expression of the choice of the voter shall by this act of voting pass from his possession and control into that of the officers charged with the duty of conducting the election, and that the voter shall have reasonable opportunity to see that it has so passed, that it shall be distinct from that handed in by any other voter, and that these written votes so handed in shall continue to be the same material things, capable of being handled, sorted and counted, and that the whole work of ascertaining and declaring the result shall be the personal act of these election officers, with the written votes before them, the sorting and counting as well as the declaration of the result being done by sworn officers. One reason for the requirement of a written vote is that the voter may have a reasonable opportunity of making his choice without immediate influence upon the part of others ; and that the reason for the requirements applicable to the sorting and counting is that the votes may not fail of their proper force by reason of mistake or fraud in the count. The safeguard erected by the Constitution is that there shall remain after the closing of the voting, in a material form, capable of being read and understood by men, a written vote cast by each voter ; and that all these individual votes, each given by the voter to the election officers, shall be read, sorted and counted in accordance with the several tenor of each, by men acting under the sanction and obligation of their respective official oaths."

There is no doubt that, in reference to the only conditions and methods which they then knew or thought possible, this is a fair statement of what was in the contemplation of the framers of the Constitution. To a majority of the court, the adoption and use of a machine which employs none of these methods, and whose working and whose record of the result is invisible to the voter, seem so great a departure from the method referred to in the language of the Constitution as not to be included within its broadest meaning. Even if the principal objects to be accomplished by the constitutional requirement would be accomplished as well by the use of the machine, it seems too great a

stretch of language to say that the use of it is the expression of a choice by a written vote.   In the opinion from which we have already quoted there is also this language :

" The turn of a, wheel or a dial, the punching of a hole in an unseen roll of paper on which are the names of candidates, by a voter who pulls a lever or turns a key, is not the use of a written vote within the meaning of the Constitution; nor is the inspection of a dial, even if preceded or followed by an inspection of all the cogs and mechanism which have moved the hands of the dial, or the counting of holes in such a paper and the inspection of the machinery which made the holes, the sorting and counting of votes by election officers.  If it be said that these are the best and most efficient means to secure a free and honest election, the answer is that they are not the means prescribed for those ends by the Constitution.   The Constitution does not authorize the General Court to put the expression of the voter's will to the chance of being nullified or perverted by slipping cogs, defective levers or other mechanical devices which have no living intelligence, no conscience and no liability to punishment to insure their going right.   It requires that every step in the task of seeing that votes, whether given by Indian corn and beans or other ballots, by show of hands, by the living voice or by paper writing, are counted rightly, shall be intrusted to and performed, not by an inanimate machine, but by sworn officers, and in open meeting, where each step of the work can be verified and mistakes corrected."

Decisions in other States that bear upon this question are under constitutional provisions differing somewhat from our own, and we do not deem them conclusive.  *In re Voting Machine,* 19 R. I. 729.   *Elwell* v. *Comstock,* 99 Minn. 261.   *Lynch* v. *Malley,* 215 Ill. 574.   *Detroit* v. *Inspectors of Elections,* 139 Mich. 548. In the opinion of a majority of the court the statute under which the respondents are acting is unconstitutional.

*Peremptory writ of mandamus to be issued.*

The case was submitted on briefs at the sitting of the court in October, 1907, and afterwards was submitted on briefs to all the justices.

*J. H. Vahey, C. H. Inness & T. F. Vahey,* for the petitioner.

*T. M. Babson,* for the respondents.