Allen, J.
 

 The demurrer squarely raises the question of the constitutionality of the charter provision as to voting machines. Hence the chief issue of law to be decided in this case is whether an amendment to the charter of the city of East Cleveland, providing for the casting of votes by a mechanical device, contravenes Section 2 of Article Y of the Constitution of Ohio, which requires that all elections shall be by ballot. At the outset we are confronted by the fact that this question has heretofore been decided by this court in the case of
 
 State, ex rel. Karlinger,
 
 v.
 
 Board of Deputy State Supervisors of Elections,
 
 80 Ohio St., 471, 89 N. E., 33, 24 L. R. A. (N. S.), 188, which held that voting by voting machines was not voting by ballot within the constitutional provision. The decision was made by a divided court. The majority opinion based its conclusion partly upon the reasoning that the constitutional provision requires that elections must be con
 
 *306
 
 ducted by “a printed or written expression of the voter’s choice upon some material capable of receiving and reasonably retaining it, prepared or adopted by each individual voter and passing by the act of voting from his exclusive control into that of the election officers, to be by them accepted as the expression of his choice.”
 

 The court adverts at length in its opinion to the fact that the voting machine often is incorrect in operation, and that it does not instill in the voter the confidence that he has voted his choice. Since these practical objections evidently had weight in influencing the decision of the court, we proceed to consider the depositions which are by stipulation of counsel made part of the record in this case.
 

 The depositions set forth the statements of election officials of great experience that the use of the voting machine results in a practically infallible count. Mr. H. Allen Nichols, commissioner of elections of Monroe county, New York, an election official with thirty consecutive years of experience; Mr. Alexander S. Carlson, president of the New York state election commission, for 20 years an election official of Onondaga county, New York; Mr. C. H. Pitchforth, county auditor of Muscatine county, Iowa, who has had charge of the elections in his county for seven years; Mr. William Spencer, who has been connected with the election commission of the state of Indiana since 1878 — all describe the practical workings of the voting machine. It is the testimony of these officials that no errors have ever been found in the count of the voting machines where they have been employed; that there has never been a successful contest of elections in pre
 
 *307
 
 cincts where voting machines are in use; that the machines are much easier for the uneducated voter to operate than the Australian ballot. It is demonstrated that the expense of elections has been reduced by the use of voting machines from approximately one-third to one-half; that the secrecy of the ballot is better protected than under the present system of the written or printed sheet; and that the vote cast is counted and returned to election headquarters within 30 to 45 minutes after the polls have closed, a fact which is a practical deterrent to fraud in election counts. Hence the sworn testimony in this record indicates that the practical reasons which seem to have influenced the court some 20 years ago-in making the decision in the
 
 Karlmger case
 
 are completely wiped away by the experience of the years. In 1909 adding machines were little used, and doubtless the lack of experience with the clerical accuracy of such devices had something to do with the decision of the court.
 

 The vital question in the case, however, remains the question whether voting by a voting machine is a voting by ballot. The current of decisions is strongly against the holding in the
 
 Karlinger case.
 
 9 Ruling Case Law, 1062. This authority states the general rule to be that a constitutional requirement that the vote be by ballot does not invalidate a statute providing for the use of voting machines in elections, the term “ballot” not being employed in its literal sense, but only for the purpose of designating a method of conducting elections which will insure secrecy.
 
 Lynch
 
 v.
 
 Malley,
 
 215 Ill., 574, 74 N. E., 723, 2 Ann. Cas., 837;
 
 U. S. Standard Voting Machine Co.
 
 v.
 
 Hobson, Judge,
 
 132 Iowa, 38, 109 N. W.,
 
 *308
 
 458, 7 L. R. A. (N. S.), 512, 119 Am. St. Rep., 539, 10 Ann. Cas., 972;
 
 Nichols
 
 v.
 
 Board of Election Commrs. of City of Boston,
 
 196 Mass., 410, 82 N. E., 50, 12 L. R. A. (N. S.), 280, 124 Am. St. Rep., 568;
 
 City of Detroit
 
 v.
 
 Board of Inspectors of Election,
 
 139 Mich., 548, 102 N. W., 1029, 69 L. R. A., 184, 111 Am. St. Rep., 430, 5 Ann. Cas., 861;
 
 Helme
 
 v.
 
 Board of Election Commissioners,
 
 149 Mich., 390, 113 N. W., 6, 119 Am. St. Rep., 681, 12 Ann. Cas., 473;
 
 Elwell
 
 v.
 
 Comstock,
 
 99 Minn., 261, 109 N. W., 113, 698, 7 L. R. A. (N. S.), 621, 9 Ann. Cas., 270.
 

 In 20 Corpus Juris, 175, Section 213, the same general rule is stated. In 24 L. R. A. (N. S.), 188, it is also said that this court in the
 
 Karlinger case
 
 arrived at a decision which stands alone: The Ohio decision has been criticized in 9 Columbia Law Review, 732.
 

 The basis of the decisions counter to the Karlinger holding is that the word “ballot,” as used in the Constitution, the statutes, and in political literature generally, means secret voting in contradistinction to
 
 viva voce,
 
 or open voting. Thus Professor John H. Wigmore, in an article in 23 American Law Review, 725, says that “his search has convinced him that in common usage the term
 
 l allot
 
 has always been used, without an adjective, to express the idea of a vote cast in such a way that its purport is unknown at the time of casting — in short, of ‘secret’ voting.”
 

 In
 
 Opinion of the Judges,
 
 7 Me., 492, 495, the court stated that the “word ‘ballot’ may be considered as opposed to a vote by word or by signs,” and decided that printed ballots come within the constitutional provision requiring written votes. The same dis
 
 *309
 
 tinction is drawn in
 
 Temple
 
 v.
 
 Mead, 4
 
 Vt., 535, at page 541.
 

 In the case of
 
 Williams
 
 v.
 
 Stein,
 
 38 Ind., 89, 10 Am. Rep., 97, the court points out the same distinction, holding that the essential of ballot voting is secrecy, in order that the elector may exercise the franchise as he pleases, uncontrolled and unquestioned by any person or power.
 

 The same doctrine has been announced in
 
 Ritchie
 
 v.
 
 Richards,
 
 14 Utah, 345, 47 P., 670;
 
 Brisbin
 
 v.
 
 Cleary,
 
 26 Minn., 107, 1 N.
 
 W.,
 
 825;
 
 People
 
 v.
 
 Cicott,
 
 16 Mich., 297;
 
 State
 
 v.
 
 Shaw,
 
 9 S. C., 94, 138;
 
 State, ex rel. Smith,
 
 v.
 
 Anderson,
 
 26 Fla., 240, 8 So., 1;
 
 Ex parte Arnold, Recorder of Voters,
 
 128 Mo., 256, 260, 30 S. W., 768, 1036, 33 L. R. A., 386, 49 Am. St. Rep., 557.
 

 In the exhaustive brief filed on behalf of the relator an interesting discussion is given of the ballot in the English Parliament, the ballot in literature, and the history of the ballot both in other countries and also in colonial times in America, which shows that, while the ballot originally was a ball which was kept concealed in the hand and used without its being known how the voter voted, the derivative and practically universal meaning of the term now is the method of secret voting, or, as stated in part 2 of volume 1 of Cassell & Co.’s Encyclopedic Dictionary (1884), page 404, “secret as opposed to open voting.”
 

 It was manifestly impossible for the framers of the Ohio Constitution to foresee all of the mechanical developments of our modern age. Just as our forefathers in drafting the national Constitution could not foresee the time when the term “post
 
 *310
 
 roads” might be applied to airplane traffic — a traffic through air lanes which have not the slightest physical resemblance to the highway, as it has been known from the time of the Egyptians down — so the framers of the Ohio Constitution could not well foresee the time when a voter, by manipulating a lever, could mark either a straight ticket or a split ticket with exactly the same definiteness of individual expression as when he marks the ballot in his hand. However, surely the impress of a lever upon the record of a voting machine is not much farther removed from marking the ballot by hand than the impress of the key of the typewriter upon the paper is removed from the actual making of characters of the alphabet by hand. If typewriting is the equivalent of long-hand, how can voting by machine be said essentially to differ, except in its efficiency, from voting by the old system of the ballot?
 

 We think that the constitutional provision was meant merely to relate to the essential secrecy of the indication of the voter’s choice; that this secrecy has been demonstrated to be retained and enhanced by the use of voting machines; that, by the vast weight of authority, the
 
 Karlinger case
 
 was an incorrect decision, and therefore we overrule that holding.
 

 We conclude, therefore, that a measure in other respects valid, which provides for the use of voting machines in elections, does not contravene the provision of Section 2 of Article Y of the Constitution that all elections shall be by ballot.
 

 A further question arises, however, as to the power of a charter city to provide that county and state elections may be held by voting machines.
 

 
 *311
 
 Under the doctrine laid down in the case of
 
 State, ex rel. Taylor,
 
 v.
 
 French,
 
 96 Ohio St., 172, 117 N. E., 173, Ann. Cas., 1918C, 896, the power to regulate and supervise elections is a power of local self-government, and is extended even to the point of permitting a charter city to determine that women may vote at a municipal election prior to their general enfranchisement. However, county and state elections are not a matter of municipal concern. The Home Rule Amendment to the Constitution does not give a municipality authority to provide how elections for county and state officers shall be conducted. The mere fact that as a matter of convenience these elections are at times united does not enhance the jurisdiction of the municipality nor extend its power beyond its own territorial limits.
 

 It is conceded that the coming election in East Cleveland is to cover, not only municipal officials, but members of the board of education. The control of election for members of a board of education is not a city function. We hence conclude that, while the major legal question involved in this record must be decided in favor of the relator, the writ must be denied for the reason that Section 33 of the city Charter, in so far as it relates to county and state elections, is unconstitutional and void.
 

 We make no decision as to the provision of the new elections statute relative to voting machines (Section 4785-161, General Code), for the reason that that statute has not yet gone into effect.
 

 Writ denied.
 

 Marshall, C. J., Kinkade, Matthias and Day, JJ., concur.
 

 Robinson and Jones, JJ., concur in proposition 2 of the syllabus and in the judgment.