William T. PORTER, Plaintiff,

v.

OKLAHOMA CITY, a municipal corpora-
tion; James H. Norick, Mayor of the City
of Oklahoma City; Patience Latting, John
N. Smith, H. T. Moran, Dr. Harry L. Deu-
pree, Bill H. Bishop, Ben Franklin, A. L.
Dowell and Rowe Cook, Members of the
City Council; Mr. S. Dale Rorem; the
Oklahoma Taxpayers Association, Inc.;
Honorable Fenton R. Ramey, District
Judge; the District Court of the Seventh
Judicial District of Oklahoma; Honorable
Clarence M. Mills, Judge of said Seventh
Judicial District; and Albert Harold
Johnson, Jr., Defendants.

No. 43175.

Supreme Court of Oklahoma.

Oct. 11, 1968.

As Corrected and Supplemental Opinion on
Rehearing Oct. 22, 1968.

James E. Work, Oklahoma City, for plaintiff.

Roy H. Semtner, Municipal Counselor, David M. Harbour, Asst. Municipal Counselor, for defendants.

G. T. Blankenship, Atty. Gen., Dell Gordon, Asst. Atty. Gen., intervenor.

Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, by C. Harold Thweatt, Oklahoma City, appearing amicus curiae in behalf of Oklahoma City Chamber of Commerce.

LAVENDER, Justice.

In this original proceeding, William T. Porter, as a resident and taxpayer of the City of Oklahoma City, asks this court to assume original jurisdiction and to enjoin the City of Oklahoma City and the individuals composing its governing body from issuing (a) "Series 'A' General Purpose Bonds of 1968" of said city, dated as of October 1, 1968, in the aggregate principal amount of $32,625,000, and (b) "Series 'A' Limited Access Facility Bonds of 1968" of said city dated as of October 1, 1968, in the aggregate principal amount of $2,670,000, and (c) "Series 'A' Fire Station and Fire Equipment Bonds of 1968" of said city, dated October 1, 1968, in the aggregate principal amount of $365,000.

62 O.S.1961, § 11, adopted in 1910, made the Attorney General of the State of Oklahoma ex officio Bond Commissioner of the State of Oklahoma; 62 O.S.1961, § 13, provides that:

"It shall be the duty of the Bond Commissioner to prepare uniform forms and prescribe a method of procedure under the laws of the State in all cases where it is desired to issue public securities or bonds, in any county, township, municipality or political or other sub-divisions thereof of the State of Oklahoma; and it shall be the further duty of said Bond Commissioner to examine into and pass upon any security so issued, and such security, when declared by the certificate of said Bond Commissioner to be issued in accordance with the forms of procedure so provided shall be incontestable in any court in the State of Oklahoma unless suit thereon be brought in a court having jurisdiction of the same within thirty days from the date of the approval thereof by the Bond Commissioner;"

and 62 O.S.1961, § 14, also adopted in 1910, provides that "No bond hereafter issued by any political or municipal sub-division of this State shall be valid without the certificate of said Bond Commissioner."

This proceeding, contesting the validity of these three issues of bonds because of alleged fatal defects in the election held in the City of Oklahoma City on July 16, 1968, authorizing the issuance of the bonds, was commenced in this court within the 30-day period prescribed in 62 O.S.1961, § 13. It was commenced on September 10, 1968, subsequent to the issuance, on the same date, by the Attorney General, as ex-officio Bond Commissioner of the State of Oklahoma, of his separate certificates approving each of the three issues of bonds as being issued in accordance with the Constitution and laws of this State and the forms and method of procedure prescribed by the Bond Commissioner for the issuance of such bonds. Copies of the transcripts of the proceedings with respect to the bonds, examined by the Bond Commissioner, are a part of the record before this court.

Those transcripts disclose that the governing body of the City of Oklahoma City, on August 13, 1968, received written bids for the three issues of bonds, and, on August 15, 1968, accepted the bid of Harris Trust and Savings Bank, Chicago, Illinois (and associates) for the "Series 'A' General Purpose Bonds of 1968," and sold that issue of bonds to those bidders, and accepted the bid of The First National Bank and Trust Company, Oklahoma City, Oklahoma, for the other two issues of bonds and sold them to that bidder; that the successful bid for the "Series 'A' General Purpose Bonds of 1968" is conditioned, among other things, upon delivery of the bonds to the bidders at a named bank in the City of New York, New York, "within seventy-five days from the date of sale," accompanied by a certificate of non-litigation as of the date of delivery of the bonds; and that the successful bids for the other two issues of bonds is conditioned, among other things, upon delivery of the bonds to the bidder, in Oklahoma City, Oklahoma, "on or before October 28, 1968," accompanied by a similar certificate of no litigation.

The record before us also discloses that on August 1, 1968, an action, numbered 183,721, was commenced in the District Court of Oklahoma County by S. Dale Rorem, an individual, and Oklahoma Taxpayer's Association, Inc., a corporation, as plaintiffs against the City of Oklahoma City, a municipal corporation, and the Oklahoma County Election Board, as defendants, alleging that, after the voting at the bond election of July 16, 1968, had been completed and the polls closed and the results of the voting at each polling place in the city certified to the County Election Boards involved, an error was discovered in the printing of the official "ballots" used at the polling places in Oklahoma County, which error caused an incorrect tally of the votes cast at said election on Proposition No. 1 (which involved the Limited Access Facility bonds mentioned above); "that, upon the discovery of the printing error and the incorrect tally of votes as hereinbefore described,

persons whose names are unknown to these plaintiffs, but who were within the employment, supervision and direction of the defendant, Oklahoma County Election Board, agent of the defendant, The City of Oklahoma City, made corrections upon the face of the official ballot, thereby altering, defacing and mutilating the official ballot as marked by the voters in said election;" and, based thereon, those plaintiffs prayed that the district court decree said election and the results thereof to be a nullity and a void election, and prohibit the defendant, City of Oklahoma City, from acting upon any alleged authority granted to it as a result of said election.

The record before us also discloses that on August 23, 1968, after considering the stipulations of the parties, the evidence adduced at a hearing held on that date, and the briefs of the parties, the district court found that the issues were "(1) that the election of July 16, 1968, is illegal because ballots used at such election were mutilated, (2) that the election of July 16, 1968, is illegal because it was conducted through the use of voting machines, and (3) that the election of July 16, 1968, is illegal because the certificates posted outside each precinct polling place did not correctly reflect the votes cast in such precinct," and held that the evidence before the court was not sufficient to constitute a cause of action or entitle the plaintiffs to any judgment against the defendants in the action. It also appears that those plaintiffs' motion for a new trial was overruled on September 3, 1968, and they gave notice in open court of their intention to appeal to this court. However, as of the date of this opinion, such an appeal to this court has not been perfected.

The respondents in the present proceeding deny the applicant's contentions concerning the invalidity of the bond election and of the bonds, and join with the applicant in asking this court to assume jurisdiction and to determine the questions of law raised by the applicant. They also ask that this court, in this proceeding, issue a writ of certiorari to the district judge who tried

the above-mentioned case No. 183,721 in the District Court of Oklahoma County, commanding him to certify to this court all of the records in that case and all things pertaining thereto, for review by this court, and that this court consolidate the two causes and determine, immediately, all of the questions of law presented, so that, if the bonds are not invalid for any of the reasons asserted by the plaintiffs in the two causes, they may be delivered to the successful bidders within the time specified in their respective bids.

In this connection, the respondents allege that the trend of the municipal bond market has been, and is, such that, if it becomes necessary for the city to readvertise for bids for the bonds authorized at the election of July 16, 1968, because such litigation has not been finally determined prior to the specified dates for delivery of these bonds and the bonds cannot be delivered with the required certificates that there is no litigation pending concerning the bonds, the total interest cost to the city, provided for under the new bids, would undoubtedly be from three and one-half million to four million dollars more than under the successful bids for the bonds in question herein; and that, therefore, it is of extreme public importance and of urgent necessity that the questions of law presented in this proceeding and in the above-mentioned district court case be finally determined, by this court, as quickly as possible. It appears that obtaining such a final determination of all of those questions, and, at the same time, obviating the additional interest cost to the city (which would, of course, adversely affect this applicant and all owners of property in the City of Oklahoma City which is not exempt from sinking fund levies), is the reason that this applicant commenced his action in this court rather than in the District Court of Oklahoma County.

This applicant contends, among other things that, because voting machines, rather than the usual printed, separate ballots for each voter, were used at the election of July 16, 1968, in all polling places within that part of the City of Oklahoma City that are within Oklahoma County, the election is void because held in conflict with that part of Section 6 of Article III of the Constitution of the State of Oklahoma which provides that "In all elections by the people the vote shall be by ballot."

Although, as we understand it, voting machines are being used only in Oklahoma County and Tulsa County at the present time, the statutes authorizing their use (26 O.S.1961, § 271 and following) provide for their use in all of the counties of the state (26 O.S.1961, § 271).

The question of the constitutionality of the statutes authorizing the use of voting machines, and of their use thereunder, is of statewide concern and of great public importance to all of the people of the state. The other questions presented by the applicant herein arise out of the use of voting machines at the bond election at which the issuance of the bonds in question herein was authorized. Time is of the essence in finally determining these questions. On authority of Sublett v. The City of Tulsa et al. (1965), Okl., 405 P.2d 185, we have determined to assume jurisdiction for the purpose of deciding the questions of law presented by the original applicant herein.

However, neither the District Court of Oklahoma County nor the judge thereof who tried case No. 183,721 therein is, or has been made, a party to this original proceeding, and in State ex rel. Simpson, County Attorney, et al. v. Chickasha Cotton Oil Co. (1915), 45 Okl. 472, 146 P. 433, this court held in the first paragraph of its syllabus:

"The officer or tribunal whose action is to be reviewed, and in whose possession the record of such action remains, is the proper legal authority to make return to a writ of certiorari to review such proceedings, and are therefore proper and necessary parties defendant thereto."

Without considering the question of whether the successful party to a proceeding is

a proper party to seek a writ of certiorari to review such proceedings, we decline to assume jurisdiction with respect to the application of the respondents herein for a writ of certiorari.

Section 6 of Article III of the Constitution of the State of Oklahoma, involved in the plaintiff's first proposition, provides in pertinent part that:

"In all elections by the people the vote shall be by ballot and the Legislature shall provide the kind of ticket or ballot to be used and make all such other regulations as may be necessary to detect and punish fraud, and preserve the purity of the ballot; * * *."

We first note that, unlike the provision of the Massachusetts Constitution that was involved in the only case relied upon by the plaintiff herein (Nichols v. Board of Election Commissioners, 1907, 196 Mass. 410, 82 N.E. 50, 12 L.R.A.,N.S., 280), the Oklahoma Constitution does not provide that the voting shall be by "written votes." In the annotations to the case of State of Ohio ex rel. Automatic Registering Machine Co. v. Green, Director of Finance (1929), 121 Ohio St. 301, 168 N.E. 131, as reported in 66 A.L.R. 849, the annotator states that, in all of the jurisdictions in which the question had arisen (citing cases from Illinois, Indiana, Iowa, Michigan, Minnesota, Montana, New York, Ohio, Rhode Island, and Washington), the courts have concluded that statutes authorizing the use of voting machines are not in contravention of constitutional provisions requiring that all votes shall be by "ballot," on the theory that the word "ballot" was not used in its literal sense, but only for the purpose of designating a method of conducting elections which will insure secrecy and the integrity of the ballot.

In the cited Ohio case, the Ohio Supreme Court, in arriving at the conclusion that the constitutional provision requiring that the voting be by "ballot," was meant merely to relate to the essential secrecy of the indication of the voter's choice, said:

"In Opinion of the Judges, 7 Me. 492, 495, the court stated that the 'word "ballot" may be considered as opposed to a vote by word or by signs,' * * *. The same distinction is pointed out in Temple v. Mead, 4 Vt. 535, at page 541.

"In the case of Williams v. Stein, 38 Ind. 89, 10 Am.Rep. 97, the court points out the same distinction, holding that the essential of ballot voting is secrecy, in order that the elector may exercise the franchise as he pleases, uncontrolled and unquestioned by any person or power.

"The same doctrine has been announced in Ritchie v. Richards, 14 Utah, 345, 47 P. 670; Brisbin v. Cleary, 26 Minn. 107, 1 N.W. 825; People ex rel. Williams v. Cicott, 16 Mich. 283, 97 Am.Dec. 141; State ex rel. Smith v. Anderson, 26 Fla. 240, 8 So. 1; Ex Parte Arnold, Recorder of Voters, 128 Mo. 256, 260, 30 S.W. 768, 1036, 33 L.R.A. 386, 49 Am.St.Rep. 557.

"In the exhaustive brief filed on behalf of the relator an interesting discussion is given of the ballot in the English Parliament, the ballot in literature, and the history of the ballot both in other countries and also in colonial times in America, which shows that, while the ballot originally was a ball which was kept concealed in the hand and used without it being known how the voter voted, the derivative and practically universal meaning of the term now is the method of secret voting, or, as stated in part 2 of volume 1 of Cassell & Co.'s Encyclopedic Dictionary (1884), page 404, 'secret as opposed to open voting.'

"It was manifestly impossible for the framers of the Ohio Constitution to foresee all of the mechanical developments of our modern age. * * * so the framers of the Ohio Constitution could not well foresee the time when a voter, by manipulating a lever, could mark either a straight ticket or a split ticket with exactly the same definiteness of individual expression as when he marks the ballot in his hand. * * *."

■ We perceive nothing in Section 6 of Article III of the Oklahoma Constitution which would limit voting to some method or methods under which each voter indicates his choice or choices on a separate piece of paper issued to him for that purpose. We hold that it contemplates that the Legislature shall provide a method, or methods, of voting at elections in such a way that not even those who count or tabulate the votes will know how any particular voter voted.

■ We have examined the Oklahoma statutes authorizing the use of voting machines (26 O.S.1961, § 271 and following) and hold that they are not violative of, but are in harmony with, the above-quoted provisions of Section 6 of Article III of the Constitution of the State of Oklahoma.

The plaintiff's second proposition, that the entire bond election is void because all of the ballots used in the portion of the City of Oklahoma City which lies within Oklahoma County were mutilated, arises out of (a) an admitted error in the printing of the large, columnar-ruled tally sheets (sometimes hereafter referred to as "certificate-tally sheets") that are placed inside each voting machine of the type used in Oklahoma County for the bond election in question, before any voter votes at any particular election, and upon which the total number of votes cast for, and the total number of votes cast against, each and every proposition being voted on at such an election is imprinted, as the result of pushing a certain button, after the polls have been closed and the last voter has voted on that machine, and (b) the ˈadmitted action of an employee or employees of the County Election Board of Oklahoma County in correcting such error, on each of the copies of the tally sheets which had been returned to the county election board by the officials of the various polling places in Oklahoma County.

Twelve separate bond propositions (numbered 1 through 12) were submitted to the voters of Oklahoma City at the election held on July 16, 1968. All qualified electors of the city were eligible to vote on Proposition No. 1, which related to the issuance of the limited access facility bonds involved herein, but only qualified property-tax-paying electors were eligible to vote on the other eleven propositions. On the front face of each voting machine (seen by the voters) appeared printed "ballot labels," as they are referred to in the voting machine statutes, with two voting levers for each proposition, one for voting for the proposition and one for voting against the proposition. Immediately below one of the voting levers accompanying a statement of Proposition No. 1 appeared the identifying number "2A" and, immediately below that number, appeared the word "For;" and, immediately below the other voting lever, appeared the identifying number "3A" and, immediately below that number appeared the word "Against." Each of the two voting levers accompanying the statement of each of the other eleven propositions was similarly identified but each voting lever had a different identifying number below it. Inside the machine, there was a separate digital counter for each voting lever which, if the related voting lever had been turned down by a voter, would advance one digit when that voter had finished voting and moved a large lever that opened the curtains, which, with the front face of the voting machine, formed a voting booth. The printed forms of tally sheets inside the voting machine, which the voter could not see, corresponded with the ballot labels on the front of the machine, with the proper identifying number, and were so arranged and set in the machine that, when the polls had been closed and the imprinting apparatus activated by the precinct officials, the total number of votes registered on each counter would be imprinted in the proper space on the tally sheets, and it is admitted that, with respect to each voting machine, the total number of votes registered on the counter for the voting lever numbered "2A" was imprinted in the "2A" space on the tally sheets and the total number of votes registered on the counter for the voting lever numbered

"3A" was imprinted in the "3A" space on the tally sheets. However, after the tally sheets from the voting machines, certified by the proper precinct officials as the results of the election in their precinct, had been returned to the County Election Board of Oklahoma County, it was discovered that the word "Against," instead of the word "For," appeared with the identifying number "2A" on the certificate-tally sheets and the word "For," instead of the word "Against," appeared with the identifying number "3A" on the certificate-tally sheets.

It is admitted that some one or more of the employees of the county election board, using a felt-tipped marking pen, made a line through the word "Against" that appeared in the "2A" space on each of the certificate-tally sheets and printed the word "For" in that space, and drew a line through the word "For" that appeared in the "3A" space on each of the tally sheets and printed the word "Against" in that space; and it is admitted by the plaintiff that, as so corrected, the certificate-tally sheets disclosed the correct number of votes for, and the correct number of votes against, each of the twelve propositions voted on at that election.

The plaintiff's argument is, in substance, that in the circumstances, the "ballot" consists of (a) the ballot labels on the front face of the voting machines and (b) the tally sheets in the machines with the respective total votes imprinted thereon; and that the printing error on the tally sheets combined with the correction thereof by the employee or employees of the county election board mutilated all of such "ballots" and invalidated the entire election.

We cannot agree with the plaintiff that the tally sheets used in voting machines of the type used at the election in question herein is a part of the "ballot." Under the principles upon which we decided the plaintiff's first proposition, a "ballot" is a means, or instrumentality, by which a voter secretly indicates his will or choice so that it may be recorded as being in favor of a certain candidate, or for or against a certain proposition or measure. Also, see Board of Education of Oklahoma City et al. v. Woodworth et al. (1923), 89 Okl. 192, 214 P. 1077. As we see it, the portions of the voting machine which count the number of votes as indicated by all of the voters and imprint the various totals on a tally sheet simply take the place of the human counters used under the general statutes relating to elections when voting machines are not used at an election. We hold that a mark placed on the tally sheet or certificate-tally sheet is not a "distinguishing mark" on a "ballot" within the intent of such terms as used in 26 O.S.1961, § 371. Plaintiff's second proposition must be denied.

The plaintiff's third proposition is, to some extent, related to his second proposition. He contends that the election should be declared invalid because the copy of the tally sheet from each voting machine, bearing the certificate of the precinct officials, posted outside the polling place where that machine was used, as required by 26 O.S.1961, § 368, had not been corrected in the manner that the certificate-tally sheets returned to the county election board were corrected, and, therefore, did not show the correct results with respect to Proposition No. 1.

This proposition must be denied. The right of a qualified elector to vote and to have his vote counted is basic and fundamental. When an election has been conducted in good faith, no elector has been misled, and a true and fair return of the entire election has been canvassed and made, as in the present case, the will of the people, as indicated by their votes at such election, cannot be defeated by irregularities (particularly those resulting from some act or acts on the part of the election officials) which are not sufficient to change the ultimate results of the election. See: State ex rel. Edwards v. Millar, Mayor, et al. (1908), 21 Okl. 448, 96 P. 747; Lamb v. Palmer, County Treasurer (1920), 79 Okl. 68, 191 P. 184; Mayberry et al. v. Gaddis et al. (1923), 88 Okl. 286, 213 P. 316; Gardner v. Scott (1951), 205

Okl. 333, 237 P.2d 863; and Sparks v. State Election Board (1964), Okl., 392 P.2d 711.

■ This same principle would be applicable to the plaintiff's first proposition, above, and also disposes of his fourth proposition that the bond election was tainted by the election of the precinct officials in one polling place allowing four electors to return to the voting machine, after having pulled the large lever that advances the digital counters inside the voting machine, for the purpose of voting on Proposition No. 1, which they stated they had forgotten to vote on while in the voting booth the first time. Even if it could be assumed that each of those four electors voted in favor of one, or more, or all, of the bond propositions, their votes were not sufficient to have affected the ultimate results of the election, for each of the propositions concerning the bond issues involved herein would have the required majority with four less votes for the proposition.

The plaintiff does not question the correctness of the certificates of the Bond Commissioner concerning the bonds involved herein, issued under date of September 10, 1968, except to the extent that the questions raised by him in this proceeding might be said to constitute an attack upon such approval. Consequently, it has not been necessary for us to consider all of the bond proceedings or the correctness of the Bond Commissioner's declaration with respect thereto, and we have not done so.

It is the judgment of this court that the injunction prayed for by the plaintiff herein should be, and hereby is, denied.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY and McINERNEY, JJ., concur.

HODGES, Justice, (concurring in part and dissenting in part).

I concur in all matters and issues promulgated by the majority opinion, except that part which denies the application for a Writ of Certiorari.

The case of S. Dale Rorem, an individual and Oklahoma Taxpayer's Association v. Oklahoma City, Case No. 183,721, District Court of Oklahoma County, has been adversely decided against the applicants by the trial court, and is presently in the process of appeal to this court.

The Rorem case and the present case both involve the same subject matter, facts and issues. Due to the urgency for a prompt determination, and for the protection of the rights of all parties concerned, and affected thereby, this court should under its superintending authority grant a Writ of Certiorari ordering a review of the record in the Rorem case and consolidating the matters therein presented in the present case for an immediate determination.

## SUPPLEMENTAL OPINION

LAVENDER, Justice.

Subsequent to our opinion of October 11, 1968, an action was filed in the district court of Oklahoma County, Oklahoma, entitled, Albert Harold Johnson, Jr., Plaintiff v. The City of Oklahoma City and the same officers of said municipal corporation who are defendants in this proceeding. The action brought by Mr. Johnson is case No. 184,477 in said district court and shall be hereafter referred to as the "Johnson case" or by its district court number. Responsive to an application by the defendants in this proceeding, an Order to Show Cause was directed to said Johnson and to the Hon. Clarence Mills, Presiding Judge of the 7th Judicial District of the State of Oklahoma to appear in this court and show cause why the district court suit should not be dismissed and the plaintiff therein and the judge of said court be enjoined and prohibited, respectively, from further proceeding in said matter in view of this court's opinion upon what appeared to be the same issues involved in the district court action. The parties were directed to appear on the 15th day of October, 1968, at 1:30 o'clock P.M.

On the 14th day of October, 1968, the defendants in this proceeding filed a Motion

in which it was requested that S. Dale Rorem; The Oklahoma Taxpayers Association, Inc.; The Honorable Fenton R. Ramey, District Judge of the Seventh Judicial District, as well as the above named Albert Harold Johnson, Jr. and the Honorable Clarence M. Mills be made parties defendant herein. In said Motion it was recited that both of the judges have entered their general appearances in this proceeding. According to the certificate attached to said Motion, a copy thereof was mailed to all of the last named persons.

Thereafter, on the 15th day of October, 1968, the defendants and the parties sought to be made additional defendants all appeared before this court, and a hearing was held at the conclusion of which, this court informed S. Dale Rorem and Albert Harold Johnson and the Oklahoma Taxpayers Association, Inc. that it appeared that the issues in Mr. Johnson's district court suit, as well as the issues in district court case No. 183,721 (which involved Mr. S. Dale Rorem and the Oklahoma Taxpayers Association, Inc. as plaintiffs) were the same issues determined by this court's opinion of October 11, 1968, and that if such were the facts that in the interest of preserving the integrity of this court's opinion upon those issues, the court might enjoin the parties from proceeding further in said district court suits and prohibit the respective judges and the court in which said proceedings were pending from proceeding further in said matters. Whereupon Mr. Johnson, through his attorney of record, asked permission to introduce evidence for this court's consideration upon the question and for that purpose this court designated one of its Referees to hear any and all of such evidence and to submit same to this court by a typewritten transcription of such testimony as may be adduced. Mr. S. Dale Rorem and the Oklahoma Taxpayers Association, Inc. was invited by the court to also produce at that hearing any evidence that they might have upon the issue to be determined.

Thereafter, on the 16th day of October, 1968, at 9:30 A.M., the Referee commenced hearing testimony and upon the conclusion thereof a transcript of the evidence was submitted to this court.

Thereafter, after this court had studied the record of evidence adduced, it issued its order wherein S. Dale Rorem; the Oklahoma Taxpayers Association, Inc.; the Honorable Fenton R. Ramey, District Judge; and the District Court of the Seventh Judicial District of Oklahoma; and the Honorable Clarence M. Mills, Judge of the said Seventh Judicial District; and Albert Harold Johnson, Jr., were made parties defendants in this matter. Said Order, which was issued on the 18th day of October, 1968, further stated that " * * * the court is of at least the tentative opinion that the evidence adduced at said hearing was not sufficient to establish any new or different grounds for declaring the bond election invalid other than those same issues and grounds discussed (in the opinion)." All of the parties were further directed to file briefs in this proceeding not later than 1:30 P.M., October 21, 1968, addressed to the question of why, in view of the circumstances, this court should not prohibit and enjoin all further proceedings in the two district court actions.

The only party defendant who has filed any response to this court's order of October 18, 1968, were the defendants S. Dale Rorem, individually, and The Oklahoma Taxpayers Association, Inc. The instrument filed by these defendants was entitled a "Motion" and it contested this court's statement contained in the original opinion of the city's contention that if these bonds were not sold and delivered on the dates agreed upon, additional interest cost would result in more expense to the city. Defendants Rorem and Taxpayers Association argue now that no evidence of such increase in interest rates has been shown. We fail to see how, or in what respect, the failure to adduce such evidence could affect the issue mentioned in our October 18 order and to which the said parties were directed to brief—namely, whether the evidence adduced at the hearing before the Referee disclosed issues not determined by this court's

October 11 opinion. We are not concerned —at this juncture of the case—with why this court assumed original jurisdiction in the first instance, rather than leaving the parties to their district court remedies. The contention was made—prior to our original opinion—and accepted by this court that increased costs would result to the city *if speedy disposition of the matters was not made.* No contest of that contention was then made and we were justified in assuming the correctness of it. Regardless, however, of whether the interest rate is in fact declining or increasing, we take judicial notice that the costs of the projects, for which these bond funds are to be obtained, is steadily increasing and that further delay could very well increase the cost of the projects to the taxpayers of Oklahoma City. The remainder of the defendants' "Motion" is concerned with argument as to the sufficiency and effect of the evidence adduced at the hearing before the Referee.

Before discussing that evidence in detail, however, we pause to note that in this proceeding on the 18th day of September, 1968, at a hearing before this court, Mr. S. Dale Rorem and the Oklahoma Taxpayers Association, Inc., were invited to join in this original proceeding and to stipulate upon the issues to be determined. They were further authorized at that time to file briefs in this matter. This was, of course, long prior to the promulgation of our opinion. The defendants declined to do so, as of course was their right. Again, as we have referred to, Mr. Rorem and the corporate defendant were invited by this court to produce evidence before this court's Referee bearing upon any claim of invalidity in the bond proceedings involved in our opinion. Not only did these defendants not produce any evidence at the hearing, but they declined again to appear either in person or by counsel. Notwithstanding the failure of these parties to appear they were, by this court's order of October 18, again given the opportunity to file a brief in this matter. The "Motion" above referred to was filed instead.

We also wish to point out that in our opinion of October 11, 1968, we inadvertently referred to Series "A" Fire Station and Fire Equipment Bonds of 1968 of said City dated October 1, 1968, in the aggregate principal amount of $365,000.00. Such bonds were not involved in the July 16, 1968, election and should not, therefore, have been mentioned in the opinion. All reference to such bonds in our original opinion is therefore withdrawn. We further notice that the thirty day period in which a contest may be filed of the Bond Commissioner's approval of the bonds herein involved, as provided by Tit. 62 O.S. 1961, § 13, has now expired.

Considering now the evidence which was adduced before the Referee, we find that three persons testified in behalf of the plaintiff, Mr. Johnson. The first of these was an employee of the company which printed the certificate-tally sheets so referred to in our opinion and which (the witness stated) were printed after the proofs had been approved by an employee of the election board. We fail to see the significance of this testimony as we have heretofore held that " * * * the will of the people, as indicated by this vote at such election, cannot be defeated by irregularities (particularly those resulting from some act or acts on the part of election officials) which are not sufficient to change the results of the election."

The next two witnesses were Mrs. McElroy and a Mrs. Lapp. The first witness stated she checked some precincts and discovered a difference in the total votes as shown on the "public counter" on the voting machine as compared with the total signatures on the voters' book. This is the book or voters' list kept in the polling place during the voting and in which each voter signs his or her name when they come in to vote. The witnesses testified they did not check the votes cast for or against any one of the propositions or for or against all of them in any one precinct. They simply counted the signatures of the voters and compared that total with the total "official"

vote tallied for that precinct. Mrs. McElroy testified that of the precincts she or her helpers checked there were from one to forty more votes shown on the total official tally than there were signatures on the voters' book or list. The votes of various precincts were described in detail. In addition to this "irregularity" the witness testified as to nine persons, whom she named, who voted but who were not registered voters in the precinct in which they voted—that is to say, these persons names were not typed on the prepared voters' lists or book, but were written in—apparently by the voter when he or she voted. These were the only "irregularities" or variances noted by the witnesses and although they stated they had not completed their "investigation" of the election, they admitted nothing else had been checked since September 13th. The witness further stated that she did not know whether any of the "extra" votes were cast for or against the propositions.

Mrs. Lapp testified in corroboration of Mrs. McElroy concerning the matters above mentioned. Mrs. Lapp further testified as to what she called "irregularities." These consisted of her observing the election officials in her precinct ask voters if they had tax receipts. The voters would answer yes and pull some papers out of their pockets and the officials did not "check" these papers; and that she asked Mr. Newman (Secretary of the Oklahoma County Election Board) to keep the voters' affidavits so she could check them and he told her that they didn't "keep those things."

Mr. Newman, for the defendant City, testified that the affidavits mentioned by Mrs. Lapp are in storage and available, but that no one has requested to see them. He further testified that they were not stored until a few days prior to the hearing and that they were readily available to Mrs. Lapp or Mrs. McElroy prior to that time. This witness further stated that the "total votes cast" is obtained from the public counter device on the voting machine and that each time the curtain is opened by activating a lever on the machine one more number is added to the counting device and that it was entirely possible that one more such number could be added without any actual votes being cast on the propositions. He gave as an example, the situation not uncommon according to him, where a voter might sign the book, enter the booth and pull the curtain, then decide that he is not going to vote on any (or only on one or two) of the propositions. When such a voter opens the curtain to leave the booth, one vote is added to the counter (which later appears in the total votes cast or tallied for that precinct) and it is entirely possible that the voter did not vote at all on one or more of the propositions. Mr. Newman further testified that the voter registration book furnished the precinct contains the names of the voters registered in that precinct as of a day or so prior to the election. Regardless of whether a voter's name appears on the registration lists, he is permitted to vote on his Voter's Identification Card and upon his signing the affidavit. Other instances were noted where a person may only recently have registered with the precinct registrar and that person may not have forwarded the voter's name into the county election board offices.

Regarding the so-called "differences between the number of signers on the registration book and the total votes counted in the precinct, Mr. Newman stated that in order to determine if there is in reality any such difference or the extent of it, one must count not only the names appearing in the registration book, but must also include the affidavits of those whose names are not typed in—he pointed out that notwithstanding the precinct officials are instructed to add the signers of the affidavits to the voters' list, sometimes this is not done and in those instances one can only obtain an accurate comparison by considering the signatures in the book plus the affidavits and compare this total with the total appearing on the counter at the end of the day. He testified that he did this in connection with three of the precincts found by Mrs. McElroy and Mrs. Lapp to reflect

a large "extra" unauthorized vote and the "differences" disappeared. In other words, the total of the voters who signed the book plus those who signed affidavits equalled exactly the total of the number appearing on the counter.

We have carefully and completely reviewed all of the evidence in the record made before the court's Referee and based thereon we are of the opinion and hold that the evidence of irregularity in the conduct of the election and/or on the part of the election officials is not sufficient within the rule expressed by this court in the fourth paragraph of the syllabus in our October 11, 1968, opinion to invalidate the election or to render ineffective the approval of the propositions made by the voters. We are of the view therefore that the issues in the district court suits are or were identical with the issues determined by this court in its October 11, 1968, opinion.

It is a rule of this jurisdiction that where this court has once determined the issues arising out of a transaction the same issues may not thereafter be presented to a court of lesser jurisdiction where the probable result of such subsequent litigation would be an intolerable conflict between this court's opinion and the decision of the court of lesser jurisdiction. We believe such rule to be well founded and conducive to orderly procedure in the administration of justice. See Oklahoma Turnpike Authority v. District Court of Lincoln County, 203 Okl. 330, 222 P.2d 514.

We are of the view that to refuse the requested relief of prohibition and injunction against the maintenance of the district court suits, under the circumstances as reflected by this record, would work a great wrong against the taxpayers and citizens of the City of Oklahoma City and in effect would result in a denial of justice to them. We believe that under the authority of cases such as State ex rel. Freeling v. Ross, 76 Okl. 11, 183 P. 918, and Clark, Highway Comm'r v. Warner, County Clerk, 85 Okl. 153, 204 P. 929, we are justified in granting extraordinary relief in the premises.

Therefore in order to make this court's prior opinion wholly effective (see State ex rel. Trapp v. Chambers, 96 Okl. 78, 220 P. 890, 30 A.L.R. 1144), it is Ordered and Adjudged that the Hon. Fenton R. Ramey, Judge of the Seventh Judicial District and the District Court of said judicial district be prohibited from proceeding further in case No. 183,721 wherein S. Dale Rorem and the Oklahoma Taxpayers Association, Inc. are plaintiffs and it is further Ordered, that as an incident to the granting of prohibition, the said parties plaintiffs in said proceeding and who are parties defendants in this proceeding be and they are hereby, perpetually enjoined from continuing further with said action, either in the said district court or by appeal from that court to this court.

It is further Ordered and Adjudged that the Hon. Clarence M. Mills, Judge of the Seventh Judicial District and the District Court of said judicial district be prohibited from proceeding further in case No. 184,-477 in which Albert Harold Johnson, Jr. is the plaintiff and, it is further Ordered, as an incident to the granting of the writ of prohibition, that the said plaintiff in case No. 184,477 be perpetually enjoined from continuing to maintain said action or from in any way proceeding further with the same.

All the Justices concur.