Billy Wayne **FULLER,** Hal M. **Brame,** Richard M. **Brame** and **Buddy Taylor, Appellants,**

v.

The **BOARD OF EDUCATION OF ELEMENTARY SCHOOL DISTRICT NO. 22, PUSHMATAHA COUNTY, Oklahoma, a/k/a Moyers School District, Appellees.**

No. 82217.

Court of Appeals of Oklahoma, Division No. 3.

March 1, 1994.

Rehearing Denied April 5, 1994.

Certiorari Denied May 24, 1994.

Joe Stamper, Antlers, for appellants.

Steve Culbert, Oklahoma City, for appellees.

## *OPINION*

HUNTER, Presiding Judge:

Appellants filed a petition to enjoin temporarily and permanently the issuance of school bonds, alleging election irregularities sufficient to warrant the injunction. Specifically, Appellants claimed that more than nine voters were not legally qualified voters of the school district; that Appellees actively solicited people to register and vote in the election who were not qualified voters of the district; that the notices of the election did not list the polling places; that the precincts were not established by the County Election Board but rather by the School Superintendent and that the "election was not properly conducted."

At the hearing for the temporary injunction, the parties agreed that the court should consider that hearing as the hearing on the merits for the permanent injunction. The issue upon which the case turned was whether Appellants could carry their burden of proving that the result of the election, because of election irregularities, could not be determined with mathematical certainty.

**1158** ■■■■■■■■■■■■■■■■■■■■■■■

The trial court considered the testimony of the witnesses and the documentary evidence submitted. It found that the evidence proved six votes were improperly cast and four other votes were questionable. In denying the injunction, the trial court specifically found that Appellants failed to carry their burden of proving that it was impossible to determine with mathematical certainty the result of the election.

According to the certified results of the election, 208 votes were cast in favor of the issuance of the bonds and 125 votes were cast against the issue. School district indebtedness is not allowed unless approved by three-fifths (⅗) assent of the voters. Okl. Const. Art. 10, § 26.

The issues preserved for review are (1) whether there were improper votes cast by people who were not qualified to vote in the election by virtue of not being residents of the district; (2) whether it was impossible to determine with mathematical certainty that the bond issue passed by a three-fifths majority of the legal votes cast and (3) whether the election notice complied with the law. Appellants raise other issues for review, but we will not address them because they were either not placed before the trial court in the first instance, not briefed or there was a failure to adduce evidence on the allegation at trial. *Bane v. Anderson, Bryant & Co.,* 786 P.2d 1230, 1237 (Okl.1990), *DLB Energy Corp. v. Oklahoma Corporation Comm.,* 805 P.2d 657, 659, fn. 6 (Okl.1991), *Rudnicki v. Town of Valley Brook,* 424 P.2d 973, 974 (Okl.1967).

■■■■ We follow the rule that courts must, in resolving the issue of whether the persons seeking to enjoin the issuance of bonds have met their burden of proof, whenever possible, uphold the validity of bond elections. *Quinn v. City of Tulsa,* 777 P.2d 1331, 1340 (Okl.1989). We indulge every presumption in favor of the validity of a bond election. *Jackson v. Maley,* 806 P.2d 610, 615 (Okl.1991). Contests about the conduct

of special elections proceed in equity. *Walker v. Oak Cliff Volunteer Fire Protection District,* 807 P.2d 762, 768 (Okl.1990).

## I.

■■■■ Appellants presented the testimony of fifteen witnesses who voted in the bond election but who Appellants alleged were not residents of the school district. After the testimony, the court found six of the voters were not qualified to vote in the election and four other voters had questionable qualifications. Just because a voter is not living in his district, however, does not render his vote illegal. *Moore v. Hayes,* 744 P.2d 934, 937 (Okl.1987). Whether a person is a resident of the district is a fact question. We will not disturb the trial court's findings of fact on the issue of a person's intended residence unless the determination is clearly against the weight of the evidence. *Moore* at 937. Having read the testimony of the witnesses and examined the exhibits, we find the trial court's determination conclusive. Although the court did not specify which six voters were not qualified to vote or which four voters it found had questionable qualifications, it is clear that the fact determination is not clearly against the weight of the evidence. One witness, for instance, had always voted in Moyers, had only been registered in that town but was living in Durant, Oklahoma, during the time of the election because he was a student at the University there. This witness was qualified to vote in the election.

## II.

■■■■ Next, we address the question whether it was impossible for the court to determine with mathematical certainty whether the bond issue passed by a three-fifths majority of legal votes cast. "Mathematical Certainty" is a phrase used in connection with irregularities alleged to have occurred in elections involving candidates. 26 O.S.1991 § 8–120(2) [1]. *Jackson v. Maley,*

---

1. 26 O.S.1991 § 8–120(2), in pertinent part— When a petition alleging irregularities other than fraud is filed, said petition must allege a sufficient number of irregularities and of such nature as to prove that it is impossible to determine with

mathematical certainty which candidate is entitled to be certified as the party's nominee or to be issued a certificate of election, or to have his name appear on the Runoff Primary Election ballot.

806 P.2d 610, 614 (Okl.1991), *Helm v. State Election Board,* 589 P.2d 224, 228 (Okl.1979). In cases involving allegations of election irregularities in noncandidate elections, such as bond issues, the court has stated that the test is whether the irregularities were sufficient to change the ultimate results of the election. *Porter v. Oklahoma City,* 446 P.2d 384, 391 (Okl.1968). In light of 26 O.S.Supp. 1992 § 13A–101(A), the statute requiring the general election laws to apply to all elections for school districts, with certain exceptions [2], we hold that "sufficient to change the ultimate result" means proving that "it is impossible to determine with mathematical certainty" the election result.

■ Whether an election result can be determined with mathematical certainty, however, requires the use of some formula or calculation. The correct total to use is the one reflecting legal votes, not the total of all votes cast, including illegal votes. In *Baggett v. State Election Board,* 501 P.2d 817, 824 (Okl.1972), the court stated "... the Election Board cannot determine with mathematical certainty which candidate received the majority of the legal votes cast because of the inexcusable conduct of certain precinct election officials ..." *Jackson v. Maley, supra,* also supports our holding that the correct total from which to determine how many aye votes are necessary to obtain a three-fifths majority is the total of legal votes cast. The *Jackson* court states, at 615, that the illegal votes must be in sufficient numbers to eliminate the margin of victory and that an illegal vote should be discarded.

In the instant case, the court found six illegal votes and four questionable votes. Counting them as ten illegal votes, the total legal votes cast would be 323 instead of 333. Three-fifths of 323, or 60% of 323, yields 193.8 (194) votes required to comprise three-fifths. Subtracting ten from the victors side, 208–10, leaves a difference of 198. Because 198 exceeds the three-fifths margin of 194 by four votes, the election result is determinable

with mathematical certainty. Although we agree with the trial court's finding that only ten votes were illegal, even if Appellants had proven fifteen illegal votes, that would be an insufficient number to change the election result [3].

### III.

■ Finally, Appellants claim that the election notices were deficient because they failed to name the locations of the combined boxes and failed to include information about absentee voting. The statute in question, 26 O.S.Supp.1992 § 13A–101(E) provides, in pertinent part:

> At least ten (10) days prior to a school election, the superintendent for each board of education for a district in which voter registration information has been combined, shall publish a notice and issue a news release of the polling place locations for that election in a newspaper of general circulation in each county where voter registration information was combined. Said notice shall list the name and location of the combined polling places, and which precinct will conduct the voting. Said notice shall include information about options for absentee and in-person absentee voting.

The published public notice stated that the Community Building Box Number 2 and Finley Box Number 8 would be combined with the Church of Christ Box Number 1 and that the Miller Box Number 5 and the Clayton Box Number 15 would be combined with Moyers Baptist Church Box Number 7. The notice did not state the locations of the combined boxes and did not contain information about absentee voting.

■ In this instance, deficient notice is not sufficient to invalidate an election. It is not enough to show an irregularity existed. Appellants failed to carry their burden of proving that the irregularity resulted in prejudice. *Town of Grove v. Haskell,* 24 Okl. 707, 104 P. 56, 59 (1909). There was no evidence presented showing any voter failed to vote at

---

**2.** 26 O.S.Supp.1992 § 13A–101(A), in pertinent part—Except as otherwise provided by law, the general election laws shall apply to all elections for school districts and vocational-technical school districts.

**3.** Fifteen illegal votes from the total cast, 333, leaves a difference of 318. Three-fifths of 318, or 60% of 318, equals 190.8 (191). Fifteen illegal votes from the side of the victor, 208–15, equals 193. One hundred ninety-three votes is two votes greater than the required 191.

the election because of "want of notice" or failure to post notice with exact conformity with the law. *Town of Grove* at 58. In light of the number of votes cast, the presumption of the validity in bond elections and no evidence showing that a person failed to vote because of the deficiencies in the notice, we hold that in this case, the deficiency of the notice, by itself, is not sufficient to cause us to invalidate the election. Election laws should not be used to obstruct the "free and intelligent" casting of votes or election results unless there is a clear expression in the statute that the particular act or omission is "essential to the validity of the election." *Jackson v. Maley*, 806 P.2d 610, 616 (Okl. 1991). We distinguish *Walker v. Oak Cliff Volunteer Fire Protection District*, 807 P.2d 762 (Okl.1990) because in that case the notice was published one day before the election, evidence was presented that voters were unaware that an election had been had and only about 10% of the eligible voters cast votes in that election.

Appellees' motion for summary disposition is denied.

For the above reasons, we affirm the determination of the trial court which found the injunction should not issue.

AFFIRMED.

GARRETT, V.C.J., and BAILEY, J., concur.