[Cite as *State v. Alderman*, 2016-Ohio-130.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| ALEC D. ALDERMAN | : | Case No. 2015 AP 06 0025 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Tuscarawas County
                                  Court of Common Pleas, Case No.
                                  2014 CR 11 0313


JUDGMENT:                         Reversed and Remanded


DATE OF JUDGMENT:                 January 13, 2016


APPEARANCES:

For Plaintiff-Appellant                   For Defendant-Appellee

MICHAEL J. ERNEST                         KEITH A. WARSTLER, JR.
Assistant Prosecuting Attorney            2859 Aaronwood Ave., Suite 102
125 E. High Avenue                        Massillon, Ohio 44646
New Philadelphia, Ohio 44663

*Baldwin, J.*

{¶1}   Appellant State of Ohio appeals a judgment of the Tuscarawas County Common Pleas Court granting a motion to suppress evidence filed by appellee Alec D. Alderman.

STATEMENT OF FACTS AND CASE

{¶2}   Around midnight on August 28, 2014, Deputy Travis Stocker of the Tuscarawas County Sheriff's Department was on routine patrol in the area of River Road. He observed a white car parked in a wooded area, near the Tuscarawas River.  He also saw what appeared to be a camp fire burning.  Although he travels the road often, he had never known of this area to be used for camping.

{¶3}   Deputy Stocker stopped to investigate.  As he approached the scene, he noted three people sitting near the fire, and two men standing behind a tent.  He asked the group if they had permission to be on the property, and they responded that they did not.  They also indicated that they did not know who owned the property.  Deputy Stocker first checked the identification of the two men behind the tent, Damian Nelson and Jeffrey Elmore, and discovered active arrest warrants for both of the men.  After placing them under arrest and placing them in the patrol car, he checked the identification of the remaining three people: appellee, Chloe Kidd, and Rachel Hundley.  There were no warrants for these three individuals.  At this point the officer believed that appellee, Kidd and Hundley were free to leave, although in his opinion they probably felt like they could not leave.  His cruiser was blocking the white car, which belonged to appellee.

{¶4}  The deputy then walked behind the tent where Nelson and Elmore were standing when he approached the scene earlier.  When arresting Nelson and Elmore, the deputy noted that they appeared to be under the influence of a drug because they did not respond to him, and they were drowsy as if they might fall asleep standing up.  On the ground behind the tent, Deputy Stocker found a 20-ounce plastic bottle containing a clear liquid, a baggie containing a green leafy substance, a joint, and coffee filters stuffed inside a cigarette package.

{¶5}  Deputy Stocker looked inside the car.  Without opening the door or shining a flashlight into the car, he by moonlight observed a clear hose which in his experience is often used to make methamphetamine.  The deputy also saw a pipe above the steering wheel.  The pipe was made from a broken light bulb wrapped in aluminum foil, and the bottom was burned.  The pipe was consistent with pipes the deputy had previously seen that were used to cook methamphetamine.

{¶6}  When the deputy asked appellee about the hose, appellee claimed in a defensive manner that it was not his.  Appellee, Kidd and Hundley all denied ownership of the pipe.  The deputy called a canine unit.  The dog, Figo, alerted on the vehicle at the trunk and the passenger door.  A search of the vehicle produced the pipe with residue, the clear hose, and a butane torch.

{¶7}  Deputy Stocker went back to the tent.  He lifted a corner of the tent near where Elmore and Nelson had been standing and found a folded piece of paper containing brown powder.  Inside the tent, the officer found more coffee filters and 50-75 aluminum foil balls, which from his experience he knew to be of a type used when starting the process of making methamphetamine.  He also found a bag about 25 yards from the

tent which contained items used in the manufacture of methamphetamine: opened cold medicine packets, muriatic acid, Drano, and pipe cutters.

{¶8}    Elmore, appellee, Nelson and Kidd were indicted for illegal assembly or possession of chemicals for the manufacturing of drugs (R.C. 2925.041(A)) and illegal use or possession of drug paraphernalia (R.C. 2925.14).   Appellee filed a motion to suppress evidence.   Following a hearing, the court granted the motion to suppress, holding that "the encounter between the law enforcement agents of the State of Ohio and these individual Defendants on 8/28/2014 should have been terminated once certain individuals were arrested on outstanding warrants and after the investigating law enforcement officer(s) did not announce that these three remaining Defendants at the location in question were under the arrest for the crime of Criminal Trespass."  Judgment, June 2, 2015, page 3.

{¶9}    The State of Ohio appeals, assigning a single error:

{¶10} "THE APPELLEE DID NOT HAVE A REASONABLE EXPECTATION OF PRIVACY AS A TRESPASSER."

{¶11} The State argues that appellee lacks standing to challenge the search because he was a trespasser without a reasonable expectation of privacy.   The State further argues that the deputy had a reasonable suspicion of criminal activity to justify the detention of appellee, Kidd and Hundley at the scene.

{¶12} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio

St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶13} The Fourth Amendment protects persons from "unreasonable searches and seizures" by the government. *State v. Jackson,* 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 8, citing *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals*, 63 Ohio St.3d 354, 364, 588 N.E.2d 116 (1992). Section 14, Article I of the Ohio Constitution is interpreted to provide the same protections as the Fourth Amendment. *State v. Robinette*, 80 Ohio St.3d 234, 238, 685 N.E.2d 762 (1997). Evidence seized in violation of the Fourth Amendment will be suppressed pursuant to the exclusionary rule. *Jackson,* 2004-Ohio-3206 at ¶ 8, 102 Ohio St.3d 380, 811 N.E.2d 68.    However, the

defendant must have a reasonable expectation of privacy in the evidence seized to have standing to challenge the search or seizure. *Id.,* citing *Alderman v. United States*, 394 U.S. 165, 171-172, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The defendant bears the burden of establishing that he had a legitimate expectation of privacy in the area searched. *State v. Dennis*, 79 Ohio St.3d 421, 426, 683 N.E.2d 1096 (1997).

{¶14} Ownership or possession of incriminating evidence does not alone justify a finding of standing. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Instead, the pivotal inquiry is "whether [the defendant] had an expectation of privacy *in the area searched.*" (Emphasis added.) *United States v. Salvucci*, 448 U.S. 83, 93, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619, 629 (1980). While an overnight guest in a home may claim the protection of the Fourth Amendment, one who is merely present with the consent of the homeowner may not. *State v. Renner,* 12th Dist. Clinton No. CA2002–08–033 2003-Ohio-6550, ¶10, citing *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 471, 142 L.Ed.2d 373 (1998).

{¶15} Further, when an individual intentionally or voluntarily places his or her property in a place where he has no legitimate expectation of privacy, such as an abandoned shack or as a trespasser upon another's property, he has no legitimate reasonable expectation that they will remain undisturbed and has no standing or right to contest a search. *United States v. Jackson,* 585 F.2d 653, 658 (4th Cir. 1978). He has no more expectation of privacy than if he had placed the item in plain view, and he cannot object to its seizure. *Id.*

{¶16} The trial court found that the officer did not have authority to detain Hundley, Kidd and appellee at the scene without placing them under arrest for trespass. The court

held that the police encounter with these three individuals had to terminate at the point where the officer placed Elmore and Nelson under arrest.

{¶17} However, the evidence of drug activity seized from the ground behind the tent was not seized as a result of the continued detention of appellee, Kidd and Hundley. Whether or not they were free to leave or were lawfully or unlawfully detained, the officer was not required to leave the premises, as neither appellee nor the other three individuals had a reasonable expectation of privacy in the real property. All of the individuals present at the site told the officer that they did not know who owned the property and that they did not have permission to be there. Nothing in the record suggests that appellee had a reasonable expectation of privacy in the area searched. Therefore, appellee lacked standing to object to the search of the real property.

{¶18} In addition, nothing in the record indicates that appellee had any expectation of privacy in the tent or the bag that was searched. As the items were voluntarily left in an area in which appellee did not have an expectation of privacy, he lacks standing to challenge the seizure and search.

{¶19} The car belonged to appellee. Before searching the car, the deputy found on the ground behind the tent a baggie of green leafy matter, a joint, and a cigarette packet of coffee filters, which in the deputy's experience was not normal and had a connection to meth labs. The deputy further had noted that Nelson and Elmore appeared under the influence of a drug when he arrested them on the outstanding warrants. At this point in time, the deputy had a reasonable suspicion of criminal activity to detain appellee and the other two individuals remaining at the scene. See *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.E.2d 889 (1968).

{¶20} "As a general rule, one does not have a reasonable expectation of privacy in common or public areas. When others have access to an area, the accused assumes the risk that others will observe the items left in open view. While the accused may have a subjective expectation of privacy in his car while parked in a business lot [or a public street], it is not one * * * society is prepared to recognize as reasonable." *State v. Claytor,* 85 Ohio App.3d at 633, 620 N.E.2d at 913 (Harsha, P.J., concurring); *State v. Harris* (1994), 98 Ohio App.3d 543, 649 N.E.2d 7. Appellee had parked his car in an area in which he had no reasonable expectation of privacy, as he did not have permission to be there nor did he know who owned the property. Therefore, as to the hose and the pipe which were left in plain view in his car, appellant did not have a reasonable expectation of privacy. Further, the observation of these items gave the officer further reasonable suspicion of criminal activity to justify appellee's detention at the scene.

{¶21} The use of a drug detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. *State v. Mullins,* 5th Dist. Ashland No. 05 COA 2, 2006-Ohio-821, ¶11. It is well-established that the use of a drug detection dog in an otherwise lawfully detained vehicle does not arouse any search and seizure concern under either the United States Constitution or the Ohio Constitution. *Id.* When the canine unit arrived, the vehicle was otherwise lawfully detained. After the canine alerted on the vehicle, the deputy had probable cause to search the vehicle. See, e.g, *State v.* Carlson, 102 Ohio App.3d 585, 600, 657 N.E.2d 591, 601 (9th Dist. Medina 1995).

{¶22} The court erred in granting the motion to suppress.

{¶23}  The assignment of error is sustained.  The judgment of the Tuscarawas County Common Pleas Court is reversed.  This case is remanded to that court for further proceedings according to law.  Costs are assessed to appellee.

By: Baldwin, J.

Delaney, J. concur.

Hoffman, P.J. concurs
separately

*Hoffman, P.J., concurring*

{¶24} I concur with the majority Appellee did not have a reasonable expectation of privacy as to any item laying out in the open area. I am not persuaded Appellee did not have a reasonable expectation of privacy as to items found in or under the tent nor to items in his vehicle. I do not believe the fact Appellee did not have express permission from the owner of the property to be there does not automatically result in a trespass – particularly when ownership of the land is never established.

{¶25} The deputy testified there were no, no-trespassing signs in the area. I am not convinced mere presence of the property of another automatically results in an abandonment of all expectation of privacy as to any and all items brought onto the property.

{¶26} Nevertheless, I concur in the result reached by the majority based upon the evolving reasonable suspicion of criminal activity under the facts of this case.[1]

---

[1] Though argued, Appellant did not separately assign as error the trial court's decision on this ground.